## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-DP-00818-SCT

*WILLIAM JOSEPH HOLLY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/03/93 |
| TRIAL JUDGE: | HON. JAMES C. SUMNER |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | FRANK L. BURNETTE, II |
| | DAVID O. BELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY (POST CONVICTION RELIEF) |
| DISPOSITION: | DENIED - 03/12/98 |
| MOTION FOR REHEARING FILED: | 3/26/98 |
| MANDATE ISSUED: | 6/25/98 |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. William Joseph Holly was convicted in March, 1993 of capital murder for the robbery and murder of David Norwood, Jr. in Grenada County. His conviction and death sentence were affirmed by this Court in ***Holly v. State***, 671 So. 2d 32 (Miss. 1996), *cert. denied*, ***Holly v. Mississippi***, 116 S. Ct. 2565 (1996). Holly filed his Application for Leave to File Motion to Vacate Judgment and Death Sentence in this Court on July 2, 1997, raising some eighteen assignments of error. While many of the issues are procedurally barred, we consider them to the extent necessary to address Holly's claims of ineffective assistance of counsel. Finding that he has failed to present a substantial showing of the denial of a state or federal right or that his attorney's performance at trial was constitutionally deficient, we deny his application for post-conviction relief.

### STATEMENT OF THE CASE

¶2. On July 12, 1992, seventeen year-old William Holly, along with two other teenagers, Tommy

Benefield and Waylon Kendall, robbed and killed David Norwood, Jr. Holly was eventually apprehended in Decataur, Illinois, following a shoot-out with police in a shopping center parking lot. He was tried for capital murder, kidnaping and grand larceny and was convicted on all counts. On direct appeal, this Court affirmed the capital murder and kidnaping convictions and sentences, but reversed and vacated the grand larceny charge. *Holly*, 671 So.2d at 34.

¶3. In his petition for post-conviction relief, Holly raises the following issues for this Court's consideration:

> I. THIS DEATH SENTENCE RESTS IN PART UPON A CONVICTION OBTAINED IN ILLINOIS BY MEANS OF A GUILTY PLEA MADE WITHOUT UNDERSTANDING EITHER BY HOLLY OR HIS ILLINOIS COUNSEL OF THE FACTUAL AND LEGAL CONSEQUENCES THEREOF IN CONTEXT OF THIS CAPITAL PROCEEDING, IN VIOLATION OF *JOHNSON v. MISSISSIPPI.*

> II. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO PRESENT THE UNDERLYING FACTS OF A PRIOR FELONY CONVICTION WHERE SUCH EVIDENCE WAS IRRELEVANT AND WITHOUT PROBATIVE VALUE.

> III. THE PROSECUTION IMPROPERLY COMMENTED ON THE DEFENDANT'S FAILURE TO TESTIFY IN THE SENTENCING PHASE.

> IV. JURY INSTRUCTION S-5 AT THE GUILT PHASE RELIEVED THE STATE OF THE BURDEN OF PROVING INTENT TO COMMIT THE UNDERLYING FELONY, THEREBY VIOLATING THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND STATE LAW.

> V. THE LEGISLATIVE MANDATE AS TO WHAT FACTORS JUSTIFY IMPOSITION OF A DEATH SENTENCE WAS FLOUTED WHEN THE PROSECUTION RELIED ON ARBITRARY FACTORS TO ADVOCATE DEATH, VIOLATING WILLIAM HOLLY'S RIGHTS UNDER MISSISSIPPI LAW AND THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES.

> VI. THE SUBMISSION OF THE "ROBBERY" AGGRAVATING CIRCUMSTANCE VIOLATED STATE LAW AND THE STATE AND FEDERAL CONSTITUTIONAL PROHIBITIONS AGAINST CRUEL AND UNUSUAL PUNISHMENT.

> VII. MISSISSIPPI LAW FAILS TO AUTHORIZE IMPOSITION OF THE DEATH PENALTY FOR CRIMES COMMITTED BY JUVENILES, HENCE THE DEATH SENTENCE IMPOSED ON WILLIAM HOLLY IS INVALID UNDER THE STATE AND FEDERAL CONSTITUTIONS AND MUST BE VACATED THE DEATH PENALTY FOR A JUVENILE WITHOUT ANY PARTICULARIZED PRE-TRIAL FINDINGS BEING MADE AS TO HIS MATURITY AND MORAL RESPONSIBILITY, VIOLATES THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, § 28 OF THE MISSISSIPPI CONSTITUTION OF 1890.

VIII. THE SENTENCING INSTRUCTIONS AND PROSECUTION'S ARGUMENT VIOLATED THE EIGHTH AMENDMENT AND STATE LAW BY PREVENTING THE JURY FROM CONSIDERING RELEVANT MITIGATING CIRCUMSTANCES.

IX. HOLLY'S STATE AND FEDERAL CONSTITUTIONAL RIGHT NOT TO BE TWICE PUT IN JEOPARDY FOR THE SAME OFFENSE WAS VIOLATED WHEN THE JURY WAS ALLOWED TO CONVICT HIM OF BOTH MURDER DURING THE COMMISSION OF A ROBBERY AND THE LESSER INCLUDED OFFENSE TO ROBBERY OF GRAND LARCENY - DIRECT APPEAL DISMISSAL OF COUNT ON GRAND LARCENY DID NOT CURE ERROR IN THIS DEATH CASE.

X. THE AGGREGATE ERROR IN THIS CASE REQUIRES REVERSAL OF THE CONVICTION AND DEATH SENTENCE.

XI. THE STATE ABUSED PROSECUTORIAL DISCRETION IN THIS CASE AND VIOLATED HOLLY'S SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS BY SCHEDULING THREE CAPITAL TRIALS WITHIN A TWO MONTH PERIOD IN GRENADA COUNTY INVOLVING WHITE AND BLACK DEFENDANTS WITH NO SAFEGUARDS FOR ANY OF THEM WITH RESPECT TO RACIAL OR LOGISTIC IMPLICATIONS IN THE LIMITED JURY POOL OF THE RURAL COUNTY.

XII. A VERBATIM RECORD WAS NOT MAINTAINED IN THIS CAPITAL PROCEEDING VIOLATING HOLLY'S RIGHTS TO A FULL AND FAIR REVIEW BY THE SUPREME COURT OF MISSISSIPPI IN VIOLATION OF HIS RIGHTS UNDER THE MISSISSIPPI AND UNITED STATES CONSTITUTIONS.

XIII. THE TRIAL COURT VIOLATED HOLLY'S RIGHT TO A FAIR TRIAL AND HIS RIGHT TO COUNSEL BY LIMITING THE TIME AVAILABLE FOR HIS COUNSEL TO ARGUE ISSUES TO THE JURY.

XIV. SENTENCING INSTRUCTIONS TO THE JURY ALLOWED IT TO CONSIDER AN AGGRAVATING CIRCUMSTANCE NOT PROVED, A CAPITAL CONVICTION IN THE STATE OF ILLINOIS.

XV. THE PROSECUTION ENGAGED IN SUCH EGREGIOUS MISCONDUCT WITH RESPECT TO PRESENTATION OF EVIDENCE, CROSS-EXAMINATION OF WITNESSES AND ARGUMENT TO THE JURY TO CONSTITUTE A DENIAL OF DUE PROCESS OF LAW UNDER CONSTITUTIONS OF THE STATE OF MISSISSIPPI AND THE UNITED STATES.

XVI. THE MANNER IN WHICH MITIGATING CIRCUMSTANCES WERE SUBMITTED TO THE JURY RESULTED IN A DENIAL OF HOLLY'S CONSTITUTIONAL RIGHTS UNDER THE LAWS OF MISSISSIPPI AND THE UNITED STATES.

XVII. COUNSEL WAS INEFFECTIVE IN THE GUILT PHASE OF THE TRIAL, FAILING TO OBJECT TO PREJUDICIAL QUESTIONS BY THE PROSECUTOR, FAILING TO OBJECT TO INSTRUCTIONS GIVEN BY THE COURT, FAILING TO PURSUE AND

PRESERVE PRETRIAL MOTIONS EITHER OVERRULED OR IGNORED BY THE COURT, FAILING TO OBJECT TO PREJUDICIAL ARGUMENT BY THE PROSECUTOR, FAILING TO PRESERVE ERROR FOUND PROCEDURALLY DEFAULTED ON DIRECT APPEAL, AND FAILING TO ADEQUATELY INVESTIGATE THE CASE.

XVIII. HOLLY'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT THE SENTENCING PHASE WAS VIOLATED BY HIS ATTORNEY'S FAILURE TO INVESTIGATE, PREPARE AND PRESENT MITIGATION EVIDENCE, FAILING TO OBJECT TO INFLAMMATORY ARGUMENT, FAILING TO OBJECT TO PREJUDICIAL QUESTIONS BY THE PROSECUTOR, FAILING TO OBJECT TO INSTRUCTIONS GIVEN BY THE COURT, FAILING TO PURSUE AND PRESERVE PRETRIAL MOTIONS EITHER OVERRULED OR IGNORED BY THE COURT, AND FAILING TO PRESERVE ERROR FOUND PROCEDURALLY DEFAULTED ON DIRECT APPEAL.

ARGUMENTS AND DISCUSSION OF THE LAW

I.

¶4. Holly argues first that his capital murder conviction is based in part on guilty pleas entered in Illinois. He asserts that those pleas were not knowingly entered because they were taken without knowing how they would or could be used in his subsequent capital murder trial in Mississippi. Holly acknowledges that the proper place to attack the Illinois convictions is by post-conviction remedy in Illinois state court, which he indicated he will pursue, informing this Court of the disposition. *Johnson v. Mississippi*, 486 U.S. 578 (1988). We decline further to address an assignment of error where there is no corresponding request for relief.

II.

¶5. Michael Beck, an investigator from the Decataur, Illinois, Police Department, testified briefly during the sentencing phase about the events surrounding Holly's apprehension there on July 15, 1992, which led to his conviction there for attempted aggravated kidnaping and attempted murder. Defense counsel voiced only one objection based on hearsay. On direct appeal, we found the issue to be barred based on counsel's failure to raise a meaningful objection. Holly now complains that the trial court erred in allowing evidence of a prior felony conviction that was irrelevant and without probative value and that counsel was deficient in not pursuing his objections to the evidence.

¶6. Miss. Code Ann. § 99-19-101(1)(1994) states in part that during the sentencing proceeding, "evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances." Section 99-19-101(5)(b)(1994) states that one of the aggravating circumstances which may be considered is that "[t]he defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person." This was one of the aggravators submitted to the jury, and one of two aggravating circumstances that the jury found applicable. In *Williams v. State*, 684 So. 2d 1179, 1195 (Miss. 1996), we held that because the burden was on the State to prove beyond a reasonable doubt the existence of the aggravating circumstance in question, "[k]nowledge of a past crime is

needed in order for the jury to consider whether an aggravating circumstance exists in determining punishment." In this case, Investigator Beck's testimony briefly summarized the facts upon which Holly's Illinois convictions were based. The jury was not burdened with unnecessary details, but was provided with relevant information to use in deciding beyond a reasonable doubt whether the aggravating circumstance in question existed. Counsel's failure to object more strenuously to the testimony, therefore did not fall outside the realm of reasonable professional assistance. *Carney v. State,* 525 So. 2d 776, 780 (Miss. 1988).

## III.

¶7. Holly's next assignment of error, that the prosecution improperly commented on the defendant's failure to testify in the sentencing phase, was raised on direct appeal and found to be without merit. It is now barred by the doctrine of res judicata. *Cole v. State,* 666 So. 2d 767, 774 (Miss. 1995); Miss. Code Ann. § 99-39-21(3)(1994).

## IV.

¶8. Holly asserts that Instruction S-5, which was given without objection at the guilt phase of Holly's trial, relieved the State of its burden of proving intent to commit the underlying felony, thus violating his fourteenth amendment due process rights and state law. The issue was raised on direct appeal and procedurally barred by counsel's failure to object. Instruction S-5 stated:

> The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you believe from the evidence, beyond a reasonable doubt, that the defendant, William Joseph Holly, did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime(s) of capital murder, kidnaping, or grand larceny or immediately connected with them, or leading to its commission, then and in that event, you should find the defendant guilty as charged to that particular crime.

¶9. We approved similar instructions in *Carr v. State*, 655 So. 2d 824 (Miss. 1995) and *Simmons v. State*, 568 So. 2d 1192 (Miss. 1990). In these cases, we reviewed the instruction in question in combination with all other instructions given and found no error. Looking at other instructions provided in the case *sub judice,* we note that Instruction C-4 informed the jury that the State had the burden of proving "every material element of the crime with which he is charged." Instruction S-1 further stated that the State was required to prove all the elements of capital murder, as well as the underlying felony of robbery, in order to convict. Pursuant to *Carr* and *Simmons,* Instruction S-5 was proper. There is no merit, therefore, to Holly's assertion that counsel was deficient in failing to object to the granting of the instruction.

## V.

¶10. Holly next argues that the State's argument and proof went beyond what should have been allowed to prove the alleged aggravating circumstances, flouting the legislative mandate as to what factors justify imposition of a death sentence. These issues were raised on direct appeal and found to

be procedurally barred for failure to object at trial. Holly now takes issue with the prosecution's introduction of a photograph of David Norwood sitting in his taxi cab, as well as the testimony of Norwood's wife identifying the taxi cab and the money orders and discussing the missing person's report she filed on her husband. Holly alleges that this method of presentation was not "necessary or helpful" and that other witnesses could have produced the "better" or "best" evidence on the subject. He cites no authority for his assertion that the State must use a particular witness who can "best" present the evidence. Mrs. Norwood's testimony was brief and the evidence introduced through her obviously was relevant.

¶11. Holly next argues that the circuit court erred in allowing the prosecution to introduce evidence concerning others who might also have become victims in the youths' spree. He particularly mentions the minister who gave him and his friends a ride after Norwood's cab broke down, the police officer who stopped and asked about Norwood and the cab, the people that gave Holly some water for the cab, as well as potential victims in Illinois. He relies on *Balfour v. State*, 598 So. 2d 731, 746 (Miss. 1992), where the district attorney, during the sentencing phase, "repeatedly questioned Balfour on 'how many more' robberies she intended to commit before she was arrested and taken into custody on October 7, 1988." There, we found that a propensity to commit future crimes or future dangerousness was not one of the eight aggravating factors named by statute, and as a result repeated questioning in this area during the sentencing phase was erroneous. *Balfour*, 598 So. 2d at 748. The propensity to commit future crimes or of future dangerousness, however, is not at issue here.

¶12. Much of the State's argument as to potential victims logically could be inferred from the testimony presented at trial. The evidence showed that Tommy Benefield called Neely's Cab Company, but did not request any particular driver; a fair inference would be that whoever answered the call could have been Holly's victim. Waylon Kendall testified that Holly told him that if anyone came close he was to shoot, and if he did not follow orders, he would be shot. Kendall testified further that Holly ordered him to drive Norwood's taxi because Holly would be the better shot if they were stopped by police. Kendall further stated that Holly told him that if he tried to leave, he would shoot Kendall's parents, and that the reason Kendall didn't inform the preacher who gave them a ride about the murder was that he was afraid that Holly would shoot the preacher, too. Holly told Illinois police that he had considered calling a pizza delivery person instead of a taxi. As for potential victims in Illinois, Holly was not arrested until he had fired several shots at police.

¶13. Next, Holly objects to what he perceives as religious overtones in the prosecution's argument during the sentencing phase, "Well, what value can be put on the life of David Norwood, Jr.? The only thing is an eye for an eye. He took a life, he tried to take another life, and he deserves the death penalty." The reference is extremely limited and does not mention its source. Pursuant to our decision in *Carr v. State*, 655 So. 2d 824, 853 (Miss. 1995), the objection is meritless.

¶14. Next, Holly raises the prosecution's comment in the sentencing phase that "[The death penalty] is the appropriate sentence in this case. That's the only way we can put the message out that we can stop Bill Hollys." Holly raises the familiar prohibition against asking the jury to use its verdict to send a message. We find no merit in this argument. *See Wells v. State, 698 So. 2d 497, 514 (Miss. 1997)*.

¶15. Holly further argues that it was erroneous and prejudicial to admit into evidence the total number of firearms and weapons in his possession during the events which lead to his conviction. We

disagree. Considering the circumstances of this case, the weapons in Holly's possession clearly were relevant. *Stringer v. State*, 454 So.2d 468, 475 (Miss. 1984).

¶16. Because there is no merit to the assignments of error now raised, we cannot say that counsel's failure to object to any of these comments or evidence admitted was deficient or prejudicial to Holly's defense.

## VI.

¶17. Holly next argues that the submission of the "robbery" aggravating circumstance violated state law and constitutional prohibitions against cruel and unusual punishment. This issue was found to be without merit on direct appeal. It is res judicata. *Cole*, 666 So. 2d at 774.

## VII.

¶18. Holly's contention that the imposition of the death penalty for crimes committed by juveniles is unconstitutional was addressed on direct appeal and is now res judicata. *Cole,* 666 So. 2d at 774.

## VIII.

¶19. Holly next asserts that the sentencing instructions and prosecution's argument violated the eighth amendment and state law by preventing the jury from considering relevant mitigating circumstances. Because no objection was raised at trial, this issue was procedurally barred on direct appeal. Sentencing Instruction C-1 stated in relevant part:

> You have found the defendant, WILLIAM JOSEPH HOLLY, guilty of the crime of capital murder. You must now decide whether the defendant will be sentenced to death or life imprisonment for the Capital Murder of David James Norwood, Jr. In reaching your decision, you may objectively consider the detailed circumstances of the offense for which the defendant was convicted, and the character and record of the defendant himself. You should consider and weigh any aggravating and mitigating circumstances, as set forth later in this instruction, but you are cautioned not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.

Having approved similar instructions in other cases, we find no error in granting the instruction in question. *Blue v. State*, 674 So. 2d 1184 (Miss. 1996); *Willie v. State*, 585 So. 2d 660 (Miss. 1991).

¶20. Holly further argues that the State's closing argument, viewed in conjunction with Instruction C-1, informed the jury that it could not consider sympathy or other relevant mitigating evidence. Holly contends that this argument "was tantamount to an instruction to the jury that it could not consider relevant mitigation evidence." There is no merit, however, to the assignment of error. *Pinkney v. State*, 538 So. 2d 329, 351 (Miss. 1988).

¶21. Because there was no error in the granting of Sentencing Instruction C-1, Holly's attorney's failure to object to the instruction does not render his performance deficient.

## IX.

¶22. Holly next argues that it was a violation of his right against double jeopardy to be convicted of

capital murder, with the underlying felony of robbery, and to be convicted separately of grand larceny. On direct appeal, this Court reversed and vacated the grand larceny conviction. *Holly*, 671 So. 2d at 45. The issue is now res judicata.

X.

¶23. Holly's argument that the aggregate error in this case warrants its reversal was addressed on the merits on direct appeal and is, therefore, res judicata. *Cole,* 666 So. 2d at 774.

XI.

¶24. Holly alleges next that the jury selection statutes of Mississippi prevent a fair cross-section of the community from being represented on juries, or on his jury specifically. Holly also argues that Grenada County had some sinister motive for trying his case at approximately the same time of the capital murder cases of Anthony Joe Doss and Frederick Bell. We agree with the State that the issue could have been raised at trial and/or on direct appeal. Holly is therefore procedurally barred from raising it here for the first time. Miss. Code Ann. § 99-39-21(1)(1994).

XII.

¶25. In his next assignment of error, Holly argues here that the court reporter did not fully transcribe the record which prevented him from having his appeal fully heard. It is apparent that certain motions hearings and bench conferences were not transcribed. On numerous occasions, we admonished trial courts and court reporters, particularly in capital cases, to "take notes of all proceedings at trial so that they will be available in the event of an appeal." *Davis v. State*, 684 So. 2d 643, 651 (Miss. 1996). Holly, however, does not allege that anything amounting to error was in the omitted trial proceedings. We find that the issue is procedurally barred pursuant to § 99-39-21(1) and do not fault counsel for not ordering the transcription of these proceedings.

XIII.

¶26. Holly contends that the trial court violated his right to a fair trial, as well as his right to counsel, by limiting the time available for arguing issues before the jury. During closing argument on the guilt phase defense counsel, after almost ten pages of argument, stated, "Ladies and gentlemen, my time is narrowing down, the Court has told me I have two or three minutes." Although he made no request for further time, Holly now argues that he was prejudiced by this limitation.

¶27. Holly failed to raise this issue on direct appeal, thus barring him from raising it here for the first time. § 99-39-21(1). Procedural bar notwithstanding, we have found that while the length of closing argument is generally within the trial court's discretion, an unreasonable limit placed on the closing argument, together with a showing of prejudice, will result in reversible error. *Willie v. State*, 585 So. 2d 660, 676 (Miss. 1991). In *Conner v. State*, 632 So. 2d 1239 (Miss. 1993), the trial court limited defense counsel to forty-five minutes for closing arguments in the guilt phase and fifteen minutes in the sentencing phase. However, Conner neither objected nor requested additional time, leading Holly to now claim that counsel was deficient in not so doing. Further, he did not indicate what, if any, additional argument he had planned to make. In the case *sub judice,* the defense's closing argument took approximately thirty minutes. Even if Holly could show that the limitation in

question was short enough to be unfair, he has not shown that he was prevented from presenting a portion of his argument or otherwise prejudiced. There is no merit, therefore, to his argument or his claim of ineffective representation by counsel.

XIV.

¶28. Miss. Code Ann. § 99-19-101(5)(b)(1994) provides in relevant part that: "Aggravating circumstances shall be limited to the following: . . . (b) The defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person." Holly contends that the sentencing instruction given to the jury allowed it to consider his conviction in Illinois, an aggravating circumstance he claims was not proven. Sentencing Instruction C-1 instructed the jury as follows:

> To return the death penalty you must find that the mitigating circumstances--those which tend to warrant the less severe penalty of life imprisonment--do not outweigh the aggravating circumstances--those which tend to warrant the death penalty.
>
> Consider only the following elements of aggravation in determining whether the death penalty should be imposed:
>
> 1. The defendant, William Joseph Holly, was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person.
>
> 2. The capital murder of David James Norwood, Jr. was committed while the defendant was engaged or was an accomplice, in the commission of armed robbery.
>
> 3. The capital murder of David James Norwood, Jr. was committed for the purpose of avoiding or preventing a lawful arrest.

Holly's attorney objected to Instruction C-1, stating:

> BY MR. JONES: Your Honor, additionally, with respect to the aggravating circumstances, number 1, B, that this occurred, the Defendant Holly was previously convicted of another capital offense, it appears to me that he has not been convicted of another capital offense, and that language should be stricken, and the fact that the other felonies occurred after this case, and for that reason we would object. But certainly, the matter of another capital offense should be stricken.
>
> BY THE COURT: Well, I don't know if that offense up there is a capital charge or not, but, clearly, it's in the record.
>
> BY MR. JONES: Well, Your Honor, he got 2 years and 8 years, so it's certainly not.
>
> BY THE COURT: I don't know what you can plead to, but I think it allows them to find for those offenses committed in Illinois, and that's denied, as well.

The jury unanimously found aggravating circumstance #1 beyond a reasonable doubt.

¶29. Holly now argues that the language of aggravating circumstance #1 "was previously convicted

of another capital offense" was prejudicial because his Illinois convictions did not involve capital crimes; the jury apparently was not supplied with a definition of "capital crime;" and the closing argument references to Holly's "hypothetical victims" exaggerated this aggravator.

¶30. Holly failed to raise this as an issue on direct appeal and is thus precluded from raising it here for the first time. § 99-39-21(1). Procedural bar notwithstanding, it has never been suggested that Holly was convicted of a capital crime in Illinois. The trial court's basis for denying Holly's objection was less than clear. However, it is quite clear to this Court that the aggravating circumstance in question tracks precisely the statutory language, that the accused "was previously convicted of another capital offense *or of a felony involving the use or threat of violence to the person.*" § 99-19-101(5)(b) (emphasis added). While the language involving capital offense could have been deleted, the language as a whole clearly presented an either/or choice for the jury, and Holly makes no argument that his Illinois convictions were not "felonies involving the use of threat of violence to the person." We further reject his argument that the Illinois felonies may not be considered because they took place after Norwood's murder. ***Taylor v. State***, 672 So. 2d 1246, 1274-75 (Miss. 1996).

XV.

¶31. Holly further asserts that the prosecution engaged in such egregious misconduct with respect to presentation of evidence, cross-examination of witnesses and argument to the jury so as to violate his due process rights. This issue was not raised on direct appeal and thus is procedurally barred pursuant to Miss. Code Ann. § 99-39-21. We consider it only in terms of Holly's claim that counsel was ineffective in failing to object to the complained of behavior.

¶32. Holly took the stand during the guilt phase of his trial. During cross-examination, the State questioned Holly about his attempt to call for a pizza delivery rather than a taxi cab. He was asked: "And, if you'd gotten a young boy or girl out there, driving a pizza car, that's who'd have been laying on the ground dead, wouldn't it?" Holly responded that he couldn't "say that would have happened." In closing arguments, the State emphasized that Holly would have "killed anybody he had to cover that crime up," including the people who gave the youths a ride into Coffeeville, the police officer who stopped to ask about Norwood, the people from whom Holly tried to borrow water when the cab broke down, and the families of the boys that were with him. Holly now argues that this argument was inappropriate. He further claims that the District Attorney also alleged that defense counsel had called him a liar and misstated the evidence regarding the taking of Norwood's driver's license and threats that he would come back for him if Norwood ever told anyone about the incident.

¶33. Holly cites numerous cases from this and other jurisdictions holding that the prosecutor should not argue facts not in evidence, misstate facts, or vilify the defendant or counsel opposite. However, we allow attorneys wide latitude in closing arguments, limiting them not only to facts, but also to deductions and conclusions which may be drawn therefrom, and to the application of the law to those facts. *Wells v. State*, 698 So. 2d 497, 506 (Miss. 1997). Where the argument does not result in "'unjust prejudice against the accused as to result in a decision influenced by the prejudice so created,'" we will find it harmless. *Wells*, 698 So. 2d at 507 (quoting ***Davis v. State,*** 530 So. 2d 694, 701 (miss. 1988); ***Davis v. State***, 684 So. 2d 643, 656 (Miss. 1996). While this is especially true where the defendant fails to make the contemporaneous objection, ***Ballenger v. State***, 667 So. 2d 1242 (Miss. 1995), Holly's attorney's failure to object cannot be viewed as constitutionally deficient since

the prosecutor's argument was not outside the realm of that allowed by this Court.

## XVI.

¶34. The jury was instructed, through Sentencing Instruction C-1, on the aggravating and mitigating circumstances to consider in sentencing. Holly refers derisively to the seventeen mitigating factors itemized in the instruction as the "laundry list." His mother was the only witness during the sentencing phase of the trial. She presented limited testimony on most of the factors, but introduced no documentary evidence. Holly now complains for the first time that there was other evidence available to support the mitigating factors which his attorney could have introduced, but didn't. He cites no authority to support this argument and is procedurally barred from raising it here for the first time pursuant to Miss. Code Ann. § 99-39-21. Whether his attorney effectively presented evidence in support of the instruction is discussed in Issues XVII and XVIII, *infra*.

¶35. He also argues that Sentencing Instruction C-1 required the jury to find a mitigating circumstance unanimously before it could be considered and weighed against the aggravating circumstances, in violation of the United States Supreme Court rulings in *Mills v. Maryland*, 486 U.S. 367 (1988) and *McKoy v. North Carolina*, 494 U.S. 433 (1990). Sentencing Instruction C-1 requires that the aggravating circumstances each be found unanimously; it does not impose such a requirement for the mitigating circumstances. "Where the instruction does not use the words 'unanimously' or 'unanimous' in the mitigating circumstances portion of the jury instructions 'but instead is found only in the aggravating circumstances portion,' we have held that the instruction does not offend the holding in *Mills*." *Davis v. State*, 684 So. 2d 643, 665 (Miss. 1996)(quoting *Hansen v. State*, 592 So. 2d 114, 149-50 (Miss. 1991)). Procedural bar notwithstanding, this issue is without merit.

¶36. Holly further takes issue with the first paragraph of Sentencing Instruction C-1, which states:

> **You have found the defendant, WILLIAM JOSEPH HOLLY, guilty of the crime of capital murder. You must now decide whether the defendant will be sentenced to death or life imprisonment for the Capital Murder of David James Norwood, Jr. In reaching your decision, you may objectively consider the detailed circumstances of the offense for which the defendant was convicted, and the character and record of the defendant himself.** You should consider and weigh any aggravating and mitigating circumstances, as set forth later in this instruction, but you are cautioned not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice public opinion or public feeling.

(emphasis added). Although the issue is procedurally barred pursuant to Miss. Code Ann. § 99-39-21, we note that in *Carr v. State*, 655 So. 2d 824, 857 (Miss. 1995), we found that similar language was not erroneous in light of the entirety of the instruction in which it was contained and the others as a whole. This issue is without merit.

## XVII.

¶37. Holly contends that his trial attorney, Leland Jones, was ineffective during the guilt and sentencing phases of the trial, alleging myriad sins of omission and pointing mostly to the issues already raised in this petition for relief. In order to prevail on a claim of ineffective assistance of

counsel, a defendant must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-696 (1984); *Wilcher v. State*, 479 So. 2d 710, 713 (Miss. 1985); *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984). This Court looks at the totality of circumstances to determine whether counsel's efforts were both deficient and prejudicial. *Carney v. State*, 525 So. 2d 776, 780 (Miss. 1988); *Read v. State*, 430 So. 2d 832, 839 (Miss. 1983). "Judicial scrutiny of counsel's performance [is] highly deferential." *Strickland*, 466 U.S. at 689. There is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Carney*, 525 So. 2d at 780; *Gilliard v. State*, 462 So. 2d 710, 714 (Miss. 1985). Only where it is reasonably probable that but for the attorney's errors, the outcome of the trial would have been different, will we find that counsel's performance was deficient. *Dickey v. State,* 662 So. 2d 1106, 1109 (Miss. 1995); *Reed v. State,* 536 So. 2d 1336, 1339 (Miss. 1988).

¶38. Holly notes several instances where Jones failed to object, particularly to the State's cross-examination of Holly during the guilt phase and of his mother during sentencing. Holly's cross-examination was discussed in Issue XV. During cross-examination, Holly's mother was asked, "Isn't it true the only way to keep him from killing again is to give him the death penalty?" While a question concerning the possibility of Holly committing future crimes may be within the prohibition announced in *Balfour v. State*, 598 So. 2d 731, 746-47 (Miss. 1992), this single question was not comparable to the extensive line of questioning in *Balfour*, and even if counsel should have objected, the result was not an unreliable verdict.

¶39. Holly further contends that Jones's failure to object to inflammatory and prejudicial closing argument in the sentencing phase of the trial amounted to ineffective assistance of counsel. The record shows that Jones did not raise any objections during the argument, although there were several points at which an objection might have been appropriate. However, we do not find that counsel's failure to object shakes our confidence in the reliability of the outcome. *Strickland,* 466 U.S. at 694.

XVIII.

¶40. The crux of Holly's complaint of ineffective assistance of counsel during the sentencing phase is that Jones did not adequately investigate, prepare and present mitigation evidence.[1] Holly also alleges that Jones was ineffective for failure to move for some kind of expert/investigator to help him present this evidence.

¶41. Holly's mother was the sole witness presented by the defense during the sentencing phase. She testified about Holly's childhood without a father or father figure; that she was away much of the time working; that she had been involved in an abusive relationship which William had witnessed; that the boy had performed poorly in school; suffered from low self esteem and didn't get along with other children his age; the family's economic difficulties; and that he was remorseful for his crimes. She endured a difficult cross-examination, particularly on the fact that she had bought Holly the weapons he was carrying during the events in question here.

¶42. Holly now contends that he was entitled to much more in the way of supporting mitigating evidence in the sentencing phase from his mother, or psychologists, or other experts. Attached as Exhibit 1 to this application for post-conviction relief are numerous documents from counselors,

mental health professionals, law enforcement and court officials concerning Holly's social and mental heath, primarily from 1984 to 1987, when he was ten to thirteen years old. Another group of reports, from 1987, show Holly as obese, lonely, aggressive and suicidal. These documents, none of which were introduced at trial, show in much more detail essentially the same evidence Holly presented through his mother.

¶43. We have dealt with the issues of adequate investigation and presentation of evidence in the context of ineffective assistance of counsel in death penalty cases. *See* **Foster v. State**, 687 So. 2d 1124 (Miss. 1996); **Conner v. State**, 684 So. 2d 608 (Miss. 1996);**Woodward v. State,** 635 So. 2d 805 (Miss. 1993); **State v. Tokman**, 564 So. 2d 1339 (Miss. 1990). As distinguished from these cases, Jones never moved for any kind of mental exam for Holly, although his time records indicate that he discussed the possibility of doing so with Mrs. Holly between October, 1992 and January, 1993. While neither Holly's sanity nor his competence were at issue, a mental exam might have produced helpful mitigation evidence as well as additional, more convincing witnesses for the sentencing phase. Jones claimed to have spent approximately ninety hours preparing for this case out of court. We have only a sketchy outline of what Jones investigated, and no way of knowing what he found and why he didn't file a motion for Holly to have a mental examination. Assuming that Jones had the documents contained in Exhibit 1 and presuming, as we must, that he acted within the range of reasonable professional assistance, we may also assume that he reviewed them and considered them, as a matter of trial strategy, to be more damaging than beneficial. They show a person who might be pitied, but also one who might be dangerous to property and persons.

¶44. To proceed further in the circuit court, Holly must present a substantial showing that Leland Jones's conduct was deficient, and a reasonable probability that, but for the deficient conduct of his trial, the outcome of his trial would have been different. ***Strickland,*** 466 U.S. at 694; ***Dickey,*** 622 So. 2d at 1109. Considering the defenses available in this case, we find that Jones' presentation of Holly's mitigation evidence in the sentencing hearing through only one witness, his mother, was deficient. However, Holly has not shown a reasonable probability that but for Jones's presentation of that evidence at the sentencing hearing, the verdict would have been different. The requisite showing on the second prong of **Strickland** has not been made.

¶45. Holly also argues that Jones should have investigated Illinois law concerning his previous convictions. There is nothing in the record to show that Jones didn't investigate Illinois law. Further, since the Illinois convictions could not be attacked in Holly's Mississippi trial, any alleged inadequacy of his attorney's exploration of the legal aspects of these convictions was not a determining factor in this case.

CONCLUSION

¶46. We find that William Joseph Holly has failed to present a substantial showing of the denial of a state or federal right and for the reasons stated herein, deny his Application for Leave to File Motion to Vacate Judgment and Death Sentence.

¶47. **APPLICATION FOR LEAVE TO FILE MOTION TO VACATE JUDGMENT AND DEATH SENTENCE DENIED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH, MILLS**

**AND WALLER, JJ., CONCUR.**

1. The seventeen mitigating factors enumerated in Sentencing Instruction C-1 were: (1) the age of Defendant at the time of the crime; (2) As a child Defendant exhibited emotional and scholastic difficulties; (3) Single parent family; (4) Defendant lacked father figure; (5) Defendant endured lonely, isolated, depressed childhood; (6) Poor school functioning; (7) Exhibited low self esteem as youth; (8) Lacked positive interactions as child; (9) Lacked significant positive parental figure; (10) Lacked guidance and nurturing as a youth; (11) Lacked social reinforcement based on positive behavior; (12) Family lacked financial stability; (13) Economic assistance from father non-existent; (14) Exposed to physical abuse of mother by her partner; (15) Remorse on behalf of Defendant; (16) Acceptance of responsibility by Defendant; (17) Any other matter, any other aspect of the defendant's character or record, and any other circumstance of the offense brought to you during the trial of this cause which you, the jury, deem to be mitigating on behalf of the defendant.