IRVING, J.,
for the Court.
¶ 1. On November 6, 2000, Joe Louis Williams pleaded guilty to manslaughter and illegal possession of a firearm. He was sentenced to fifteen years for manslaughter, and three years for possession, with the sentences to run concurrently. He now challenges his plea and conviction on the ground that he was provided with ineffective assistance of counsel at his sentencing.
¶ 2. Finding no error, we affirm.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 3. The only error that Williams alleges on appeal is ineffective assistance of counsel.[1] In order to succeed, Williams must prove that (1) his counsel was deficient and (2) that deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Additionally, the entering of a guilty plea limits what issues a defendant may raise on appeal: “A valid guilty plea, however, admits all elements of a formal criminal charge and operates as a waiver of all non-jurisdictional defects contained in an indictment against a defendant. Put another way, all non-jurisdictional objections to the indictment are waived.... ” Brooks v. State, 573 So.2d 1350, 1352-53 (Miss.1990) (citátions omitted).[2]
*244 ¶ 4. The crux of Williams’s argument is that his counsel failed to discover evidence of Williams’s schizophrenia, and that, had his attorney discovered and presented this evidence, the court may have reduced Williams’s sentence. Williams asserts that the court may have considered the evidence to be mitigating because he alleges that he hears a voice which tells him to do things, and which told him to shoot and kill his victim. Williams claims that he was under psychiatric care for paranoid schizophrenia and depression at the time of his offense. Williams asserts that his attorney could have discovered these mental problems by talking to Williams’s mother or his aunt, or by asking Williams himself.
¶ 5. In his guilty plea petition, Williams stated that “I shot Marvin Smith and he died.” He also indicated that he understood the minimum and maximum sentences that he could receive. Williams’s plea was an open plea, that is, a plea made without any recommendation by the district attorney’s office. Williams’s attorney also submitted a “certificate of counsel,” which stated that he had “fully explained to the defendant the allegations contained in the indictment ...” and “the maximum and minimum penalties for each count to the defendant and considered] him competent to understand the charges against him and the effect of his petition....” The certificate ends, “I hereby certify, in my opinion, that the defendant is mentally and physically competent and that there is no known condition which would affect his understanding of these proceedings.”
¶ 6. During the guilty plea hearing, the judge specifically asked Williams whether he and his attorney had “discussed all possible defenses you would have in a trial,” and Williams stated that they had. Williams testified at the hearing that he was satisfied with the performance of his counsel. Williams also specifically testified that he was not “undergoing any mental examinations or treatment.” The hearing transcript also shows that Williams’s attorney attempted to present mitigating evidence to the judge by pointing out that Williams had cooperated with authorities and had been robbed by his victim. Williams’s attorney also told Williams to tell the judge whatever he wanted, at which point Williams explained how frightened he had been when he was robbed and how he had believed that his victim might shoot him. At no point did Williams mention any mental problems, or that any voice had told him to kill his victim, despite having the obvious opportunity to do so.
¶ 7. Williams asserts that the record reflects that he told both his attorney and the judge that he was taking drugs to help with his mental illnesses. We find no such evidence in the record, and also fail to see how this information, if it did exist, would help Williams. If anything, proof on the record that the court was aware of Williams’s mental problems serves to undermine his claim, since it would indicate that the court had the opportunity to take his mental illness into consideration during sentencing. Williams’s claim in his reply brief is, in fact, belied by the record, where he clearly told the court that he was not under treatment for any mental conditions.
¶ 8. The record contains an affidavit by Williams, dated after his plea hearing and sentence, wherein he states that his attorney “never questioned me about my mental health or my background. Had my attorney done so I would not have with *245 held any information related to my mental health from my attorney.” The only reasonable conclusion to draw from this statement is that Williams was able to talk about his mental health and the voice he heard. In short, Williams was directly asked by the court at his hearing about whether he was undergoing any mental treatment, and was given the opportunity to explain any voice that compelled him to shoot his victim. Nothing about Williams’s mental condition prevented him from addressing this matter with the court. Therefore, even if we were to hold that Williams’s attorney was deficient for failing to interview Williams’s mother and aunt, no prejudice arose to Williams, because Williams himself had a more than ample opportunity to bring his mental state to the court’s attention. ■
¶ 9. Williams’s statements at the plea hearing indicate to this Court that he either (1) was lying at his guilty plea, or (2) is lying in his affidavit that was submitted to this Court. When reviewing the testimony that Williams gave at his plea hearing, we are entitled to “place great weight upon a defendant’s initial plea under oath.” Templeton v. State, 725 So.2d 764, 767(¶ 10) (Miss.1998). When a defendant makes sworn statements under oath at a plea hearing, and later contradicts those statements with a self-serving affidavit, very little weight should be accorded the affidavit. See id. at 767-68 (¶¶ 11-12). Therefore, we give very little weight to Williams’s self-serving affidavit that he was suffering from mental problems at the time of his offense, because that assertion is contradicted by his previous sworn testimony at the plea hearing. Williams attempts to explain the inconsistencies between his argument and the record by asserting that his plea hearing statements were lies that the court and his attorney told him to say. Williams offers no proof of this extraordinary claim other than unsupported allegations in his brief. Without further evidence, we give no weight to this self-serving argument.
¶ 10. Williams claims that his case should be remanded because “even though counsel was physically present at the sentencing proceeding, his presence was nothing but a token appearance.” We disagree. Williams’s counsel was clearly familiar with his case, swore that he had discussed the case with Williams, and attempted to persuade the judge that there were mitigating circumstances in the case. Williams himself stated that he was satisfied with the services of his counsel. There is simply no merit to Williams’s argument to the contrary. Given the serious nature of the charges that Williams was facing (murder and possession of a deadly weapon by a convicted felon), Williams’s attorney did well to get Williams the sentence that he got. The fifteen years that he received for the manslaughter was significantly less than what he might have received for murder, and the sentence for the possession charge was ordered to run concurrently.
¶ 11. Under these circumstances, it is difficult for Williams to show that there was a “reasonable probability” that he would have received a lighter sentence had his counsel acted differently. See Holly v. State, 716 So.2d 979, 991(¶ 44) (Miss.1998). Only by showing that there is a reasonable probability that he would have received a lighter sentence can Williams show that prejudice resulted from his attorney’s performance. Since he has not shown a reasonable probability of a different result, we find no merit to his argument. Any deficiency on the part of his counsel was not prejudicial, and therefore does not constitute error.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF HUMPHREYS *246 COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HUM-PHREYS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.

. Williams does include an error in his brief regarding his sentencing order, but acknowledges that he does "not ask [us] to rule on this specific issue, other than to deem it void” because the error has already been corrected by the Humphreys County Circuit Court. Since this error has been corrected prior to appeal, we do not address it here.

. Several times, Williams cites to cases having to do with the defense of not guilty by reason of mental disease or defect. However, *244 by pleading guilty, Williams admitted his guilt. Any argument that he was not guilty because of insanity is not a proper argument for his post-conviction appeal, since he waived all those arguments by pleading guilty.