762 So.2d 800 (2000)
Jason Anthony GRANT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01506-COA.
Court of Appeals of Mississippi.
June 27, 2000.
*802 Marcie Tanner Southerland, Vicksburg, Attorney for Appellant.
Office of the Attorney General by Deirdre McCrory, Attorneys for Appellee.
Before SOUTHWICK, P.J., LEE, and MOORE, JJ.
MOORE, J., for the Court:
¶ 1. Appellant Jason Anthony Grant was indicted on one count of armed robbery and one count of possession of a concealed weapon by a convicted felon. After a trial in the Warren County Circuit Court, the *803 jury found Grant guilty on both counts. Grant was sentenced to thirty years on the armed robbery in the custody and control of the Mississippi Department of Corrections and five years on the possession of a concealed weapon with the sentences to run concurrently. Aggrieved, Grant cites the following issues on appeal
I. THE EVIDENCE WAS NOT LEGALLY SUFFICIENT TO SUPPORT THE CONVICTIONS;
II. THE CONVICTIONS WERE AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND INSTEAD WERE BASED ON BIAS AND PREJUDICE BY THE JURY DUE TO THE IMPROPER ADMISSION OF [THE FOLLOWING] EVIDENCE AT TRIAL:
A. THE COURT ERRED IN ALLOWING THE INTRODUCTION OF A PHOTOGRAPH OF THE APPELLANT HOLDING A WEAPON SIMILAR TO THE ONE USED IN THE ROBBERY;
B. THE COURT ERRED IN ALLOWING THE INTRODUCTION OF A REVOLVER FOUND BY POLICE AT A LOCATION IN THE AREA OF APPELLANT'S ARREST;
C. THE COURT ERRED IN NOT SUSTAINING THE DEFENSE'S OBJECTION TO IMPROPER COMMENTS BY THE PROSECUTOR DURING CLOSING ARGUMENTS; AND
D. THE CUMULATIVE EFFECT OF THE ABOVE ERRORS DENIED THE APPELLANT A FUNDAMENTALLY FAIR TRIAL.
Finding no error, we affirm.

I. FACTS
¶ 2. May 16, 1998, Joshua Curry and his uncle Ralph Curry were robbed at gunpoint at Shipley's Donuts ("Shipley's") in Vicksburg, Mississippi. Ralph, Shipley's proprietor, had arrived early to prepare for the day's business. Joshua, a part-time employee of Shipley's, arrived at 5:25 a.m. to set up his fryer unit. His uncle had left the door unlocked, anticipating his employees' arrival. At about 5:31 a.m. that morning, Christine Early saw Appellant Jason Grant walking down 2nd North Street toward Shipley's. Early, who lived about one block from Shipley's, was standing on her front porch when she observed Grant walking toward Shipley's. Early testified that Grant was wearing dark jeans, a light yellow-looking shirt, and a scarf on his head. Early had known Grant for approximately two years.
¶ 3. Early left her house at about 5:54 to use Shipley's pay telephone to call a taxi to take her to work. As she passed by Shipley's windows, she saw Grant pointing a gun at the Currys. Grant had a scarf tied around his face. Early knew Grant was the gunman because she had just seen him walking by dressed in the same clothes, and she saw his hair bushing out around the scarf. Early rushed to the County Market grocery store and called the police. She told them that Jason Grant was robbing Shipley's. She later returned to the scene and identified Grant, whom the police had taken into custody, as the robber. Grant called Early a derogatory name when she identified him as the robber. When asked if the person she saw walking down the street that morning was the same person she saw robbing Shipley's Early responded: "No doubt about it."
¶ 4. Joshua Curry was sixteen-years-old at the time of the robbery. He testified that the robber instructed his uncle and him to hand over the bag with the money in it. After the robber took the money bag, he ordered Joshua and Ralph to get on the floor. Joshua testified that the robber was wearing a "white thing" over his face with a hole cut out for his eyes. The robber was also wearing dark jeans and a shirt, and had a "black thing" on his head with his "afro-like" hair sticking out. Joshua described the gun as a .357 that had a black handle with molded hand grips and an emblem imprinted on the side of the handle. The gun also had a short, chrome barrel. Joshua identified the gun that was admitted into evidence as the same gun wielded by the robber.
*804 ¶ 5. The police caught Grant near the vicinity of Shipley's. He had been running and had jumped at least two fences. Police investigator Charlie Hill saw Grant toss a white object over a fence before he, Grant, jumped over the fence. At this point, Grant was wearing only jeans and tennis shoes. The police found a gun similar to the one described by Joshua under the corner of an abandoned house, approximately one hundred to two hundred feet from where they apprehended Grant. The gun was clean and shiny, indicating that it had not been under the house for a long period of time. The police never recovered the money bag or the white object that Hill saw. Photos taken of Grant when he was apprehended showed that he was wearing dark green jeans and he was sweating. He also had long, bushy hair.
¶ 6. Warren County Circuit Clerk Larry Ashley testified that Grant was a convicted felon. Specifically, Grant had been convicted of simple assault on a police officer. After the State rested its case, Grant also rested without presenting any evidence in his defense.

I. WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT THE CONVICTIONS?
¶ 7. Grant argues that the evidence did not show that he was the perpetrator of the robbery. He complains that the only witness who identified him as the robber was Christine Early, and that Early's identification was based on conjecture and assumption based upon the clothes he was allegedly wearing. Grant argues Early's identification of him was not sufficient, credible, or substantial.
¶ 8. Whether the evidence is legally sufficient is an argument appropriately raised in a directed verdict motion or a JNOV. McClain v. State, 625 So.2d 774, 781 (Miss.1993). In determining whether the trial court erred in failing to grant a directed verdict or JNOV, all credible evidence consistent with Grant's guilt must be accepted as true, and the State must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id. "We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Wetz v. State, 503 So.2d 803, 808 (Miss.1987). We note that Grant presented no evidence which leaves the jury free to give full effect to the testimony of the State's witnesses. Benson v. State, 551 So.2d 188, 193 (Miss. 1989).
¶ 9. Under the above standard of review, we find that there was sufficient evidence to create a jury issue on both counts. Early gave eyewitness testimony that she saw Grant rob Shipley's. Her testimony was highly credible being based on knowing Grant for two years, having seen him walk toward Shipley's in the early morning hours right before the robbery, and based upon his wearing the same clothes as the robber and having the same hair style. Early's testimony alone is sufficient to create a jury issue. Further, giving the State the reasonable inferences that might be drawn from the photograph of Grant wielding the same type gun, and evidence that the gun used in the robbery was found within one hundred to two hundred feet from where the police apprehended Grant, it is clear that the evidence was sufficient to withstand directed verdict and JNOV motions. Finally, the State proved that Grant was a convicted felon. Since the evidence was sufficient to create a jury issue on armed robbery, it was sufficient to create a jury issue on possession of a firearm by a convicted felon, because if convicted on count one, Grant's wielding of a gun in the robbery supports his conviction on count two.

II. WERE THE CONVICTIONS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND INSTEAD BASED ON BIAS AND PREJUDICE BY THE JURY DUE TO THE IMPROPER ADMISSION OF EVIDENCE AT TRIAL?
¶ 10. Grant argues that the trial court admitted evidence improperly which *805 prejudiced the jury to the point that the verdict was against the overwhelming weight of the evidence. An argument that the verdict was against the overwhelming weight of the evidence is challenged in a motion for new trial. The decision to grant or deny such motion is discretionary with the trial court. McClain, 625 So.2d at 781. The trial court should grant a new trial motion only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. Wetz, 503 So.2d at 812. In reviewing the trial court's denial of a new trial motion, we must accept as true all evidence favorable to the State, and we may not reverse absent an abuse of discretion. McClain, 625 So.2d at 781.
¶ 11. Under this stringent standard of review, we find no error. Early's positive eyewitness of Grant as the robber, if accepted as true as we are bound to do, supports a guilty verdict. The jury's verdict was not influenced by improperly admitted evidence because the trial judge's evidentiary rulings were correct. A full examination of the evidentiary rulings about which Grant complains follows.

A. Did the court err in allowing the introduction of a photograph of the appellant holding a weapon similar to the one used in the robbery?
¶ 12. A photograph of Grant holding a gun similar to the gun wielded in the robbery was admitted into evidence over Grant's objection. The photograph, which depicted Grant and two other individuals, was recovered from a suspected drug dealer by Detective Randy Nailor in a traffic stop. One of the individuals depicted in the photograph was wielding a gun, and the other was making a gesture associated with a certain gang. The trial judge cut away these other two individuals from the photograph, so only the portion of the photograph depicting Grant holding the gun was admitted into evidence.
¶ 13. Grant argues that the photograph was confusing to the jury and that it was highly prejudicial. A photograph of Grant holding a gun identical to the weapon wielded in the armed robbery is prejudicial; however, M.R.E. 403 does not require exclusion of prejudicial evidence. It requires exclusion of relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." M.R.E. 403. In reviewing the trial court's evidentiary decisions on appeal, we are bound by the following standard:
Relevancy and admissibility of evidence are largely within the discretion of the trial court, and reversal may be had only where that discretion has been abused. Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs.
White v. State, 742 So.2d 1126 (¶ 29) (Miss. 1999) (citing Parker v. State, 606 So.2d 1132, 1137-38 (Miss.1992)).
¶ 14. While the photograph of Grant wielding a gun that appears to be identical to the weapon used in the robbery is prejudicial, it is also highly probative. Grant did not possess the gun when the police apprehended him, and the gun that the police recovered in close proximity to the place where they apprehended him did not bear his fingerprints. The photograph clearly connects Grant to a weapon that, from the photograph, appears to be identical to the one used in the robbery. The trial judge was careful to trim away portions of the photograph that could have been misconstrued by the jury, showing that he was sensitive to the balance required by M.R.E. 403. The trial judge also informed the jury that the photo was not to be viewed as evidence of Grant's guilt on the possession of a firearm by a convicted felon charge, explaining that the picture could have been taken before Grant's felony conviction. Any possible *806 confusion on the jury's part was alleviated by this limiting instruction. Far from abusing its discretion, the trial court carefully considered both the State's and Grant's interests and reduced the prejudice to Grant as much as possible while admitting the probative photograph.
¶ 15. We are mindful of learned Judge Irving's concerns regarding exhibits S-4 and S-6 which are photographs of the weapon used in the robbery. Specifically, S-4 is a photograph of the gun found within one hundred to two hundred feet of the place where Grant was apprehended. The photograph depicts a gun with a black handle and a black barrel. S-6 depicts a gun sporting a black handle and a chrome barrel. Detective Nailor, a ten-year veteran of the Vicksburg Police Department, testified that the gun depicted in S-4 is the same gun depicted in S-6. Detective Nailor explained that he took S-4 at the location in which it was discovered with a 35 mm camera, using a flash attachment, and that the photograph made the gun appear to have a black barrel. Detective Nailor took S-6 with a Polaroid camera at his office, clearly showing that the gun had a chrome barrel.
¶ 16. Both S-4 and S-6 were received into evidence, without objection, despite the anomalous appearance of the gun barrels. Grant did not challenge Detective Nailor's testimony that the guns depicted in S-4 and S-6 were one and the same and did not question the propriety of the admission of S-4 and S-6 into evidence on appeal. While "a casual perusal of the two exhibits belies the assertion that the two weapons are one and the same," as asserted in the separate opinion, a closer perusal of the exhibits through Detective Nailor's unchallenged testimony supports the assertion that S-4 and S-6 depict the same gun. To rule otherwise would require a sua sponte determination that Detective Nailor's testimony regarding the gun is false. Such a ruling by an appellate court would be inappropriate given that Detective Nailor's veracity was never challenged either at trial or on appeal.

B. Did the court err in allowing the introduction of a revolver found by police at a location in the area of appellant's arrest?
¶ 17. Grant argues that the trial court erred when it admitted the gun that the police found 100 to 200 feet from the place where they apprehended him. Grant argues that the gun was introduced through Joshua Curry's testimony which, according to Grant, was conflicting. Specifically, Grant argues that Joshua identified the gun as the weapon used in the robbery but later testified that the gun was "similar" to the gun used in the robbery. Grant argues Curry's testimony was "less than credible," and states that he, Grant, "was victimized by the mere assumption of facts" because the police never credibly placed the gun in Grant's hands or control.
¶ 18. As a threshold issue, we note that Grant cited no authority to support this assignment of error. We may treat his failure as a procedural bar, and we are not obligated to consider this assignment of error. Turner v. State, 721 So.2d 642 (¶ 20) (Miss.1998). Regardless of the procedural bar, this issue has no merit. In Wilkins v. State, 264 So.2d 411, 413 (Miss. 1972), the court affirmed the trial court's admission into evidence of an ax that was found one hundred feet from where a burglary defendant was apprehended and where there was evidence that an ax was used in the burglary. In the case sub judice, the gun that was found within 100 to 200 feet of the place Grant was apprehended appeared to be the same gun used in the robbery. It was within the jury's purview to decide upon Joshua's credibility, Wetz, 503 So.2d at 810; therefore, the trial judge did not abuse his discretion in allowing the gun into evidence.

*807 C. Did the court err in not sustaining the defense's objection to improper comments by the prosecutor during closing arguments?

¶ 19. Referring to Christine Early's testimony during his closing argument, the prosecutor said:
Subject to humiliation, she bothered this defendant. He called her names. He humiliated her, made her feel bad in front of people that Saturday morning and Christine Early is still bothering these people. They are still attacking her today.
At this point Grant objected to relevancy, stating that there had been no testimony to "any of that." On appeal, Grant argues that this argument created unjust prejudice against him.
¶ 20. "[A]n objection on one or more specific grounds constitutes a waiver of all other grounds." Burns v. State, 729 So.2d 203 (¶ 67) (Miss.1998) and, "an objection at trial cannot be enlarged in a reviewing court to embrace an omission not complained of at trial." Brown v. State, 682 So.2d 340, 350 (Miss.1996). At trial, Grant objected at trial to relevancy of the above argument. On appeal, he seeks to enlarge that objection claiming that the argument created unjust prejudice. We are not obligated to consider this argument of error; nevertheless, the argument has no merit.
¶ 21. Attorneys are allowed wide latitude in their closing arguments. Holly v. State, 716 So.2d 979 (¶ 33) (Miss. 1998). We will find an alleged objectionable argument harmless if it does not result in unjust prejudice against the defendant which results in a verdict influenced by the prejudice. Id. The prosecutor's argument that Grant humiliated Early was supported by Early's testimony that Grant called her a "b___" when she identified him as the robber. Thus, this argument was neither irrelevant nor unjustly prejudicial.
¶ 22. The prosecutor's remark that Early is still bothering "these people" and that "they are still attacking her today" is so ambiguous that it could not have caused unjust prejudice. Grant argues that this remark "improperly led the jury to believe, among other things, that a just verdict, one calling for acquittal of the Appellant, would place the witness in danger...." The remark could equally have referred to the attack from Grant's attorney's cross-examination. We have reviewed the prosecutor's entire closing argument and have found no inference that Grant or members of his family threatened Early in any way.

D. Did the cumulative effect of the above errors deny the appellant a fundamentally fair trial?
¶ 23. "Where there is `no reversible error in any part, ... there is no reversible error to the whole.'" Wilburn v. State, 608 So.2d 702, 705 (Miss.1992) (quoting McFee v. State, 511 So.2d 130, 136 (Miss.1987)). Since the trial court committed no errors, this assignment of error is without merit.
¶ 24. In summary, Grant's complaint that the above-discussed evidentiary rulings resulted in a verdict which was against the overwhelming weight of the evidence is without merit because the trial court did not abuse its considerable discretion in making its evidentiary rulings. The verdict was amply supported by Early's eyewitness identification of Grant as the perpetrator of the armed robbery.
¶ 25. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I ARMED ROBBERY AND COUNT II OF CARRYING OF A CONCEALED WEAPON BY A CONVICTED FELON AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS ON COUNT I AND SENTENCE OF FIVE YEARS ON COUNT II, TO RUN CONCURRENTLY, IS HEREBY AFFIRMED. COSTS OF THE APPEAL *808 ARE ASSESSED TO WARREN COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, AND LEE, JJ., CONCUR. IRVING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., PAYNE, AND THOMAS, JJ.
IRVING, J., concurring in part, dissenting in part:
¶ 26. While I believe there was ample evidence in this case for the jury to find Grant guilty of the crimes charged, I write separately to voice my dissent to the admission of the photograph showing Grant holding a gun which allegedly appeared in all respects similar to the gun retrieved from under an abandoned house a short distance from where Grant was apprehended. However, I think the admission of this evidence was harmless error on the specific facts of this case; therefore, I concur with the majority in the affirmance of Grant's convictions.
¶ 27. Grant was positively identified by Christine Early as the person who robbed Shipley's Donuts. Her testimony was that she first saw Grant walk past her house and that when she came down to Shipley's to use the pay telephone, she saw him pointing a gun at the Currys. That testimony, coupled with the testimony of Larry Ashley that Grant was already a convicted felon, was sufficient to convict Grant on both counts, armed robbery and possession of a weapon by a convicted felon.
¶ 28. However, I cannot agree that the photograph showing Grant holding a gun was properly admitted. First, the threshold question for the admissibility of a photograph is whether it fairly and accurately depicts or represents a view or replica of something at a particular time that is relevant to the issues or facts before the court. See Lowery v. Illinois Central Gulf Railroad, 356 So.2d 584, 585 (Miss.1978). In this case, the relevant times were the date of the robbery and the date of conviction of the predicate felony for the charge of possession of a firearm by a convicted felon.
¶ 29. No predicate was laid for the admission of S-9 which is a photograph of Grant holding a bottle of beer in one hand and a gun in the other. The majority concludes that S-9 was properly admitted because it connects Grant with an identical type gun as the one used in the robbery. The gun used in the robbery was described by Joshua Curry as being black and chrome, black grips and chrome barrel. Even a casual view of S-9 leaves no doubt that no such connection can be made, for the grips on the weapon in S-9 are not visible, and it is impossible to glean any other characteristics for comparison purposes other than the fact that the weapon in S-9 has a chrome barrel. Moreover, the weapon which was found approximately one hundred to two hundred feet from where Grant was apprehended had black grips and a black barrel.
¶ 30. The State also introduced exhibit S-6 which was alleged to be a picture of the same weapon depicted in exhibit S-4. In my opinion, even a casual, much less thorough, perusal of the two exhibits belies the assertion that the two weapons are one and the same. The weapon in exhibit S-4 has a black barrel (and other distinguishing characteristics), and the weapon in S-6 has a chrome barrel[1]. It is apparently this limited general similarity between the barrel of the gun depicted in S-4 and the barrel of the gun depicted in S-9, that forms the basis for the argument that S-9 has probative value. But many guns have chrome barrels, even many .357 magnums. Therefore, I find nothing probative about *809 the weapon shown in S-9 other than it shows Grant holding a gun.
¶ 31. The majority seemingly accepts the notion that since S-4 and S-6 were admitted without objection, that fact compels the admission of S-9, to which timely objection was made. In my opinion, one does not compel the other. A proper analysis of the basis for the admission of S-9 does, however, require consideration of the relationship of the weapon depicted in S-9 to the weapon depicted in S-4 and S-6 since the weapon depicted in the latter two exhibits is said to be one and the same. The majority expresses a reluctance to tread into this area, for in the majority's opinion, this would require a finding that Nailor gave false testimony. Nailor's testimony that the weapon depicted in S-4 and S-6 is one and the same, along with the fact that no objection was made to the admission of S-4 and S-6, does not in my opinion preclude appellate recognition of the fact that the physical evidence, the photographs of the weapons themselves, calls into serious question the accuracy of the assertion that the weapons are one and the same. It is well-settled law that appellate courts may at their option take note of plain error in order to administer the law fairly and justly. See Boyd v. State, 204 So.2d 165 (Miss. 1967).
¶ 32. Proper and thorough appellate review of the issues raised should not be thwarted or limited by concerns of how that analysis might appear to affect the credibility of any particular witness in the case. Ensuring the administration of justice far outweighs concerns that we not appear to cast aspersions on the credibility of a particular witness. That is not to say that we should not be mindful of the effect of what we say or how we say it. Nor is to say that we should not attempt at all reasonable cost to avoid the appearance of unnecessarily assailing the credibility of witnesses, but it is simply a call to be mindful that the administration of justice should always be paramount in all that we do and that we, as appellate judges, are not required to review cases in a vacuum without the utility of common sense.
¶ 33. The record is silent as to when the photograph (S-9) was made. However, that fact is not fatal to its admission. What is fatal is the absence of any evidence that the weapon shown in S-9 fairly and accurately represents the appearance of the weapon actually used in the robbery.
¶ 34. As stated, Detective Nailor tried to make the nexus by his assertion that the weapons in S-4 and S-6 are one and the same. The weapon depicted in S-6, but not S-4, comports with the description of the robber's gun as related by Joshua. Even if we were to accept the proposition that the weapons in S-4 and S-6 are one and the same, that fact still does not warrant the admission of S-9 because, as stated, only the barrel of the weapon in S-9 is visible. That limited view is inadequate to make a comparison with the weapons depicted in S-4 and S-6. Because the weapon depicted in S-9 shares no specific distinguishing features with the weapon described as being used in the robbery other than its chrome barrel, a feature common to many weapons, I fail to see the relevance of the photograph; consequently, in my view, the trial judge abused his discretion in allowing its admission.
¶ 35. Having determined that the admission of the photograph was error, I also find that the admission was harmless error because of the strong testimony of Christine Early who identified Grant as the culprit. She was certain that the robber was Grant as she had observed him as he passed her house going in the direction of Shipley's. She later saw him in Shipley's pointing a gun at the Currys. While she could not tell what kind of gun was being used, she was certain that a gun was being pointed at the Currys. It was not necessary for the State to prove the identity of the weapon on either charge. Therefore, as stated, I find this evidence sufficient to sustain Grant's conviction even though I find the photograph inadmissible and highly prejudicial.
*810 KING, P.J., PAYNE, AND THOMAS JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Detective Randy Nailor attempted to explain the difference in appearance by saying that the photograph in S-4 was taken with a 35 millimeter camera while the photograph in S-6 was taken with a Polaroid. Even allowing for differences which might properly be attributable to the differences in the quality of the cameras, does not, in my view, explain the striking differences in the weapons.