LEE, J., for the Court.
PROCEDURAL HISTORY
¶ 1. In June 2001, Dennis Graham, along with three other men, was indicted on four counts: armed robbery, aggravated assault, conspiracy to commit armed robbery, and kidnaping. After a trial in June 2002, Graham was convicted of armed robbery and aggravated assault, but found not guilty of conspiracy to commit armed robbery. The judge granted Graham’s motion for directed verdict concerning the kidnap-ing charge. Graham was sentenced to serve life in prison for the armed robbery charge, and twenty years in prison for the aggravated assault charge, said sentences to run concurrently.
*1054 ¶2. Graham’s motion for new trial or judgment notwithstanding the verdict was denied, and through appointed counsel he now appeals to this Court raising the following issues: (1) Did the circuit court err in denying Graham’s motion for directed verdict? (2) Did the court err in denying Graham’s motion for new trial or judgment notwithstanding the verdict? (3) Was the verdict against the weight and sufficiency of evidence? Graham also filed his own pro se brief, arguing additionally that he was denied effective assistance of counsel. We review all of these issues and find no merit; thus, we affirm.
FACTS
¶ 3. On April 15, 2001, Dennis Graham (“Graham”), Calvin Graham, Nicholas Cortez and Anthony Goleman went to Michael and Carrie’s Place, a lounge in Pike County. During their stay, a brawl ensued between Graham and another patron, and owner Michael Hampton was summoned to break it up. When Hampton approached, Graham took out a gun and first fired a shot into the ceiling, then announced that this was a robbery and forced Hampton to his knees. Graham kicked and threatened Hampton, then shot him in the head and took his wallet. One of the men took Carrie Caezar, the co-owner, to a bathroom in the back after which Graham came back, pointed a gun to her chest, and told her to tell Hampton to give him all of their money, which she did. Graham and the others fled the bar in a car, which they later abandoned on the highway, running away from police on foot. Graham was caught shortly thereafter, and the other three men were caught a few days later in Louisiana.
DISCUSSION
¶ 4. Although Graham’s attorney on appeal lists three issues, he combines them into one discussion concerning the weight and sufficiency of evidence; accordingly, we address them in this manner.

Sufficiency of Evidence

¶ 5. First, we look to our standard of review concerning the sufficiency of evidence.
The standard of review for a denial of a judgment notwithstanding the verdict and a directed verdict are identical. The Mississippi Supreme Court has stated that in reviewing the trial court’s denial of JNOV: [T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the defendant’s] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence.... We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Beard v. State, 837 So.2d 235(¶ 20) (Miss.Ct.App.2003).
¶ 6. In the brief filed by Graham’s appointed appellate counsel, Graham listed five elements missing from the State’s case which he claims demonstrates that the evidence was insufficient for conviction: (1) no weapon was found; (2) no bullet projectiles or fragments of bullets were retrieved from the ceiling, the floor, or from Hampton’s head; (3) results from a gunshot residue test of Graham taken ninety minutes after the alleged shooting proved negative for gunshot residue; (4) none of the eight-hundred dollars supposedly taken was recovered; and (5) of the three who were presented a photographic lineup and a physical lineup, one person, Tim Clem- *1055 mons, picked another person rather than Graham.
¶ 7. Our standard of review does not require us to review what evidence was not presented, but to examine what evidence was presented in evaluating whether such evidence was sufficient to support the verdict. We are only to consider the credible evidence consistent with the defendant’s guilt and to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Id. Accordingly, we review the evidence that was presented to determine whether such evidence was sufficient to support the verdict.
¶ 8. At the trial co-defendants Nicholas Cortez and Anthony Goleman both testified against Graham. Cortez testified that after he saw Graham fire the gun, he fled the building and returned to the car. He testified that Graham had a gun and some wallets when he left the bar, and once in the car, Graham and Calvin began counting the money as they fled. Goleman testified that he also saw Graham counting money in the car after they fled.
¶ 9. Michael Hampton and Carrie Cae-zar, owners of the bar, both testified. Hampton identified Graham as the person who shot him in the head after forcing him to his knees, kicking and threatening him, then taking his wallet. Hampton picked Graham out of both a photographic lineup and a physical lineup. Caezar testified that Graham was the person who held a gun to her chest and demanded that she tell Hampton to give her money. She also testified that when she was being forced to the bathroom, she heard a shot and turned around to see Graham holding a gun. She also picked Graham out of both a photographic and a physical lineup.
¶ 10. Investigator Robert Holmes of the Pike’s County Sheriffs Department testified that photographs entered into evidence fairly and accurately depicted the scene, that a receipt from Addison, another of the robbery victims from the bar, was found in the getaway car, and that he was present when both Hampton and Caezar individually identified Dennis Graham from a physical lineup and photographic lineup.
¶ 11. Dr. Brett Tisdale, a doctor at the Southwest Mississippi Regional Medical Center, treated Hampton after the incident. Dr. Tisdale testified that Hampton’s head wounds were consistent with having been shot in the head.
¶ 12. Graham testified in his own behalf and denied threatening Caezar. He also denied robbing or shooting anyone, only admitting to his involvement in an altercation with someone at the bar. Viewing the evidence in a light favorable to the State, accepting that evidence in support of Graham’s guilt as true, and giving the benefit of all favorable inferences that may be reasonably drawn from the evidence, we find the evidence in this ease was sufficient to support a verdict of guilt. Thus, we find no merit to this argument.

Weight of Evidence

¶ 13. Next, Graham argues the weight of the evidence did not support the verdict, and we look to our standard of review.
Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.... [W]e give the jury’s verdict the benefit of all favorable inferences, accept as true the evidence favorable to the verdict, and reverse only if we are *1056 “convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.”
Towner v. State, 812 So.2d 1109 (¶¶ 30-31) (Miss.Ct.App.2002). A motion for new trial goes to the weight of the evidence. Grant v. State, 762 So.2d 800(¶ 10) (Miss. Ct.App.2000).
¶ 14. In Graham’s motion for new trial, he listed nothing specific, only stating his general challenge that the verdict was against the overwhelming weight of the credible evidence. We find that reasonable and fair-minded jurors could have found Graham guilty based on the evidence presented, and no unconscionable injustice results in allowing the verdict to stand. Accordingly, this point is without merit.

Ineffective Assistance of Counsel

¶ 15. In his pro se brief, Graham argues his trial counsel was ineffective. Specifically, Graham claims that his counsel failed to file any pretrial motions, failed to subpoena any witnesses on his behalf, and failed to fully investigate his case and discuss it with him. According to our standard of review, Graham must show that his counsel’s performance was deficient and that the deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Further, “[t]he burden to demonstrate, both prongs is on the defendant who faces a strong presumption that counsel’s performance falls within the broad spectrum of reasonable professional assistance.” See Ellis v. State, 773 So.2d 412(¶ 3) (Miss.Ct.App.2000).
¶ 16. In Day v. State, 818 So.2d 1196 (Miss.Ct.App.2002), Day argued that his counsel was ineffective for failing to file pre-trial motions, conduct adequate discovery and in failing to meet with him to discuss the case. Id. at (¶ 9). This Court applied Strickland and considered the totality of circumstances. Id. at (¶ 10).
This totality of circumstances must be considered in conjunction with the “strong but rebuttable presumption that counsel’s conduct falls within a broad range of reasonable professional assistance.” The presumption is overcome if the defendant demonstrates “that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” “In addition to the presumption that counsel’s conduct is reasonably professional, there is a presumption that counsel’s decisions are strategic in nature, rather than negligent.”
Id. at (¶ 11) (citations omitted). Concerning Day’s specific allegations that his attorney neglected to consult with him and to file appropriate pre-trial motions, this Court further stated:
The court held in Harveston v. State, 597 So.2d 641, 642 (Miss.1992), that “complaints of ineffective assistance of counsel, because [an] attorney failed to make pretrial investigation and to spend more time with [client], are insufficient as a matter of law.” Therefore, Day’s claim of ineffective assistance of counsel based on the counsel’s failure to meet more often with him is without merit.
In Powell v. State, 536 So.2d 13, 16 (Miss.1988), the court held that “the mere fact that the attorney did not file a motion for discovery is not sufficient to raise an ineffective assistance of counsel claim.” The Powell court determined that “ ‘the filing of pre-trial motions falls squarely within the ambit of trial strategy.’ ” This Court does not normally, and will not do so here, second guess counsel’s trial strategy.
*1057 Day, 818 So.2d at (¶ 15-16) (citations omitted) (emphasis added).
¶ 17. As Graham’s arguments are in line with those Day raised before this Court, we find that, as in Day, Graham has failed to meet the two-prong Strickland test to show deficient performance or that he was prejudiced by such deficiency. Ergo, we find this argument to be without merit.
¶ 18. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT OF CONVICTIONS OF COUNT I, ARMED ROBBERY AND SENTENCE OF LIFE IMPRISONMENT; COUNT II, AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID SENTENCES TO RUN CONCURRENTLY AND TO PAY FULL RESTITUTION, IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
McMILLIN, C. J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.