# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01133-COA

**MARIO FRANKLIN, III A/K/A MARIO FRANKLIN**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                        APPELLEE

DATE OF JUDGMENT:            06/19/2019
TRIAL JUDGE:                HON. STEVE S. RATCLIFF III
COURT FROM WHICH APPEALED:  MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     KEVIN DALE CAMP
ATTORNEYS FOR APPELLEE:     OFFICE OF THE ATTORNEY GENERAL
                            BY: ALICIA MARIE AINSWORTH
                                META S. COPELAND
                                ASHLEY LAUREN SULSER
DISTRICT ATTORNEY:          JOHN K. BRAMLETT JR.
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED - 01/05/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1.    Police arrested Mario Franklin after a package of marijuana was delivered to his girlfriend's home. Following his trial on constructive possession, he was found guilty of possessing a Schedule II drug with the intent to sell and distribute. Franklin was sentenced to forty years in custody, with twenty years to serve in prison, followed by five years of post-release supervision.

¶2.    On appeal, Franklin argues that the State failed to establish a prima facie case of constructive possession. He also insists the trial court erred in both denying his requested

jury instruction and allowing incriminating pictures into evidence. Finding no error, we affirm.

**FACTS**

¶3. While profiling incoming packages, a federal agent flagged a brown box that was en route to Canton, Mississippi, from California. He noticed the recipient's name, "E. Morris," was not associated with the package's receiving address. Likewise, the sender's name was apparently fictitious. Because the agent suspected packages coming from a particular zip code in California could contain marijuana, the agent lined up a collection of similar boxes and included the one addressed to "E. Morris" among them. A drug-sniffing dog alerted on the package addressed to E. Morris.

¶4. Following this discovery, the agent and sheriff's office planned a controlled delivery to the Canton address. The agent disguised himself as a postal mail carrier and presented the package to a man, later identified as Mario Franklin, who was standing outside the house. Franklin informed the undercover agent that "E. Morris" was not present at that moment and that the agent could leave the package at the door.

¶5. At the front door, the agent met a woman named Shanteka Morris. Morris told the agent that the package "wasn't for [her]." Despite her comment, she took the package and set it on the living room couch, where it fell near the front door. She was on her way to her mother's house across the street when authorities stopped her and commanded her to return to the apartment she came from.

¶6. Franklin and Morris were arrested in the living room for drug possession. Following

a pat-down, police confiscated three phones from Franklin's pockets. He denied owning two of them. However, a subsequent search of the phones revealed "selfies" of Franklin, pictures of large bags of marijuana on a digital scale, and text messages between the phone's sender and another party referencing slang discussions of drug-dealing transactions.

¶7. Authorities searched the rest of the home upon securing a valid warrant. A search of the master bedroom unveiled a black backpack full of marijuana, money orders in the amount of several thousand dollars, and plane tickets from California to Mississippi. Police also found men's clothing and a pill bottle containing hydrocodone in the same bedroom. Several plastic sandwich bags and a digital scale were likewise recovered.

¶8. Meanwhile, Franklin and Morris were detained in the living room. As police were arresting Morris, Franklin asked, "[W]hy are you arresting her? She had nothing to do with this. It's all mine."

¶9. Franklin's case was set for trial. During a pre-trial conference, Franklin moved to exclude the incriminating cell phone photographs from evidence. He argued the photos, one of which showed a "green leafy substance in a bag on a scale," were more prejudicial than probative since he resided in California, where marijuana possession was legal. Therefore, police failed to verify whether the photographs simply showed what could be legal activity in California. Conversely, the State argued that the photographs were necessary to identify Franklin as the person responsible for shipping marijuana from California to Mississippi. The trial court ultimately denied Franklin's motion to suppress and allowed admission of the photographs.

¶10.   During trial, Morris testified in order to cooperate with a "pre-trial diversion agreement."  When questioned about her personal relationship with Franklin at the time of his arrest, Morris stated that she and Franklin were, "[she] guess[ed], supposed to be boyfriend and girlfriend."  The jury further learned through her testimony that her brother owned the targeted residence.  However, Franklin paid rent "from time to time" when Morris asked him to because he was "staying there" and "had to help with what was going on."

¶11.   Morris testified that Franklin's main residence was in California.  However, he lived with her "from time to time" in Mississippi and would stay with her "days, sometimes a week, sometimes more," and stayed with her "several times in 2018."  When he visited Mississippi, he would sleep with her in the back bedroom.  Morris stated that she had left a key under the rug for Franklin so that he could have access to the apartment.

¶12.   When questioned about what Franklin meant when he confessed that the contraband was "all [his]," Morris claimed that he was only referring to the black backpack that was confiscated during the police's search of the apartment.

¶13.   Agents who were involved with executing Franklin's arrest also testified.  The jury discovered through one agent's testimony that Franklin lived in the same apartment complex in California that was listed as the "sender's address" on the packaged marijuana, although the apartment listed did not actually exist.  Another agent stated that in his experience, drug-dealers commonly possessed multiple phones to facilitate drug transactions.  He also stated that Franklin confirmed the clothes in the master bedroom were his.  One agent testified that when Franklin confessed that the contraband was "all [his]," he was referring to all of the

4

confiscated contraband, including the packaged marijuana.

¶14. Both Franklin and the State rested their cases. Prior to jury deliberations, the trial court introduced a jury instruction that charged the jury with ensuring that sufficient evidence existed to find Franklin "was aware of the presence and character of the controlled substance and was intentionally and consciously in possession of the substance." The instruction also explained that constructive possession "need not be actual physical possession" but "may be shown by establishing that the substance involved was subject to the defendant's dominion or control."

¶15. Franklin asked for a jury instruction to explain that "mere proximity" to the contraband was not enough to convict him of constructive possession. The court refused it, ruling that the given instruction adequately encompassed the elements of constructive possession.

¶16. Franklin was ultimately convicted of possession with the intent to sell and distribute. Aggrieved, he appeals.

**STANDARD OF REVIEW**

¶17. When assessing the sufficiency of trial evidence, "[t]he critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." *Guss v. State*, 296 So. 3d 734, 737 (¶10) (Miss. Ct. App. 2020). In considering this sufficiency, we are required to "'accept as true all credible evidence consistent with guilt' and give the State 'the benefit of all favorable inferences that may reasonably be drawn from the evidence.'"

5

*Id*. (quoting *Cowart v. State*, 178 So. 3d 651, 666 (¶41) (Miss. 2015)).

¶18.    Furthermore, "[j]ury instructions are within the discretion of the trial court and the settled standard of review is abuse of discretion." *Watkins v. State*, 101 So. 3d 628, 635 (¶22) (Miss. 2012). "When read together, if the jury instructions state the law of the case and create no injustice, then no reversible error will be found." *Id*.  The admissibility of evidence is likewise reviewed under an "abuse of discretion" standard.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).

**ANALYSIS**

¶19.    Franklin's three main arguments on appeal are (1) that there was insufficient evidence to support his constructive possession conviction, (2) that the trial court erred in refusing his jury instruction on the charge, and (3) that the trial court erred in allowing the admission of incriminating photos from his cell phone.  We address each issue in turn.

> **I.      Sufficient evidence supported Franklin's constructive possession conviction.**

¶20.    Franklin insists his constructive possession conviction was not supported by sufficient evidence.  Specifically, he argues there was no evidence that he owned the house where the packaged marijuana was delivered and that the State failed to sufficiently "tie" him to the package.

¶21.    Defendants are charged with constructive possession when they "lack . . . physical custody" of the contraband for which they are arrested. *Henderson v. United States*, 575 U.S. 622, 1783 (2015).  Convictions for constructive possession will be upheld if illegal drugs are "found near the defendant's person where the defendant exercises dominion or control."

*Guss*, 296 So. 3d at 737 (¶11); *see also* Ferrell v. State, 649 So. 2d 831, 834 (Miss. 1995) ("When the defendant owns or controls the premises where the contraband is found, there is a presumption of constructive possession"). However, if "the defendant's possession of the premises is not exclusive, there must be additional incriminating circumstances tying him to the charges." *Fultz v. State*, 573 so. 2d 689, 690 (Miss. 1990). In light of this precedent, our assignment is to determine whether Franklin "own[ed] or control[ed] the premises where the contraband [was] found," and to pinpoint any additional evidence "tying him to the charges." *Ferrell*, 649 So. 2d at 834; *Fultz*, 573 So. 2d at 690.

¶22.    We very recently addressed an argument identical to Franklin's in *Guss*, 296 So. 3d at 736 (¶¶9-14). There, a postal inspector flagged a "suspicious package" that was coming into this state from California, and was addressed to a fictitious person. *Id*. at (¶4). After a drug-sniffing dog alerted the inspector to the suspicious package, a controlled delivery to the recipient's address was set up. *Id*. An undercover agent left a "pink notification form" at the targeted apartment after no one answered the door. *Id*. But the defendant's girlfriend, who rented the apartment, called the next morning to reschedule delivery. *Id*.

¶23.    The agent attempted delivery a second time and encountered the defendant, who was home alone. *Id*. at (¶6). After the agent announced the fictitious name to whom the package was addressed, the defendant took the package "[w]ithout saying anything." *Id*. When additional agents surrounded the apartment, the defendant attempted to flee before finally surrendering. *Id*. Police found drugs, digital scales, and weapons in the master bedroom near the defendant's "side of the bed." *Id*. at 737 (¶7).

7

¶24. As Franklin does in this case, Guss argued the evidence was insufficient to show he knew the package contained drugs. *Id*. at (¶9). However, he was the only person present in the apartment at the time, despite the fact that he did not lease the premises, which established control. *Id*. at 738 (¶12). We also found that the defendant's attempt to flee once confronted was incriminating. *Id*. Moreover, we found persuasive the investigator's testimony that people who accept packages with fake names are typically aware of the package's illegal content. *Id*. We ultimately affirmed the conviction. *Id*. at 738 (¶17).

¶25. The facts surrounding Franklin's case tie him to the contraband found in his girlfriend's apartment. First, Morris testified that Franklin lived at the residence "from time to time." Likewise, he paid rent at the apartment "from time to time." In fact, he had paid rent for March 2018, the month before the package was delivered to the house.

¶26. Morris further testified that Franklin would stay at the apartment "days, sometimes a week, sometimes more," and "several times in 2018." During a search of the apartment, his clothes were found in the "back" bedroom where he commonly slept. And he had independent access to the residence because Morris left him a key to the apartment, which meant he could come and go as he pleased just as if he were the owner of the house.

¶27. Several additional factors tie Franklin to the packaged marijuana. For example, the sender's address listed on the package shared the same physical address as Morris's California apartment. So the package literally listed the same apartment complex in California where Franklin lived. The only difference was the apartment number, which did not actually exist. Finally, as police were detaining Morris, Franklin asked, "[W]hy are you

8

arresting her? She had nothing to do with this. It's all mine."[1]

¶28. The evidence is sufficient to establish Franklin's control of the apartment for purposes of establishing constructive possession of the package. Accordingly, the conviction for constructive possession is affirmed.

## II. The trial court did not err in refusing Franklin's jury instruction.

¶29. Franklin argues the trial court erred in refusing his proposed jury instruction. He agrees that the trial court's version of the instruction was sufficient under the law, but he insists his instruction was necessary because it further explained that "mere proximity is not enough [to establish] dominion and control" in constructive possession cases.

¶30. We rejected this exact argument in *Adams v. State*, 228 So. 3d 832 (Miss. Ct. App. 2017). Like Franklin, the *Adams* defendant proposed that his "more detailed" instruction on constructive possession better suited his defense theory because it "required the State to prove additional incriminating circumstances other than mere proximity." *Id*. at 837 (¶15) (internal quotation marks omitted). But we looked to precedent and found that the possession instruction in *Adams*—which was the exact instruction used in Franklin's case—was a valid "model jury instruction" since it "state[d] the law of the case and create[d] no injustice." *Id*. at (¶16) (quoting *Watkins v. State*, 101 So. 3d 628, 635 (¶22) (Miss. 2012)).

---

[1] There is a conflict in fact regarding what Franklin was referring to when he made the above statement. Morris claimed that Franklin was only referencing the black backpack, while an officer testified that Franklin was referring to all contraband inside the house, including the packaged marijuana. The jury ultimately believed the officer's testimony and was entitled to do so, for "it is the jury's responsibility as fact-finder to resolve conflicting testimony and evaluate the credibility of witnesses." *Vinzant v. State*, 99 So. 3d 767, 744 (¶25) (Miss. Ct. App. 2012).

We ultimately dismissed the defendant's proposal for a narrower version and found that the court's instruction was a "correct statement of the law and sufficiently instructed the jury of the elements of constructive possession." *Id*; *see also Bates v. State*, 952 So. 2d 320, 324 (¶14) (Miss. Ct. App. 2007) ("It is unnecessary to state that proximity alone is insufficient[] because the instructions clearly state all the elements required"). Accordingly, this issue is without merit.[2]

¶31. While the instruction Franklin sought was a correct statement of the law and could have been given, in accord with *Adams* it was not an abuse of discretion to refuse it. Therefore, we affirm.

### III. The trial court did not err in allowing Franklin's photographs into evidence.

¶32. Franklin claims the trial court erred in allowing photographs from his phone into evidence because they were more prejudicial than probative. Specifically, he claims the photographs of marijuana either "[fail] to show any connection . . . to the package at hand" or fail to establish whether the photographs depicted legal activity in California.

¶33. We tackled a similar issue in a case where a defendant, convicted of armed robbery, challenged the admission of a photograph that depicted him holding a gun similar to the one he used in the robbery. *Grant v. State*, 762 So. 2d 800, 805 (¶¶12-13) (Miss. Ct. App. 2000). He argued the picture was highly prejudicial and would "confuse [] the jury." *Id*. at (¶13).

---

[2] Furthermore, the State did not base its case on Franklin's proximity to the drugs. Rather, it focused on the circumstances surrounding Franklin that pointed to his guilt, such as the plethora of incriminating items found in the home and his admission that the contraband was "all [his]."

¶34. We agreed that the photograph was prejudicial. *Id*. However, we also iterated the longstanding principle that not all prejudicial evidence should be excluded. *Id*. In fact, relevant evidence should only be barred when its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." *Id*.

¶35. Applying this rule, we found the photograph of the defendant "wielding a gun that appear[ed] to be identical" to the one from the robbery was highly probative because it "clearly connected him" to the gun used in the robbery—especially since the gun at trial bore no fingerprints and was not on his person once apprehended by police. *Id*. We also pointed out that the trial court was especially "sensitive to the balance required by MRE 403" because it trimmed certain portions of the photograph that would be prejudicial to the defendant. *Id*. at (¶14). In light of the foregoing, we found the trial court did not abuse its discretion in admitting the prejudicial photograph. *Id*.

¶36. We likewise find the trial court did not abuse its discretion in Franklin's case. The pictures extracted from Franklin's phone and introduced at trial showed a massive quantity of bagged marijuana being weighed on a scale. This marijuana pictured at trial clearly connects Franklin to the marijuana that the police found at his girlfriend's home because it supports the State's notion that he possessed an intent to sell marijuana.

¶37. Furthermore, we find that as in *Grant*, the trial court in Franklin's case was "sensitive to the balance required by [MRE] 403" because it conducted a lengthy pretrial hearing wherein the court carefully considered the remoteness in time of all the pictures and excluded

11

pictures the court deemed prejudicial, such as one of Franklin holding a "wad of cash." *Grant*, 762 So. 2d at 805 (¶14). As a result, we find the trial court did not abuse its discretion in admitting the photographs.[3]

## CONCLUSION

¶38. Sufficient evidence supported Franklin's conviction. Additionally, the trial court did not err in refusing his jury instruction on constructive possession or allowing admission of Franklin's photographs. We therefore affirm his conviction.

¶39. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR.**

---

[3] Franklin preserved this argument on appeal via pretrial suppression hearing. *See* MRE 103(c)(1) ("Once the court rules definitively on the record either before or at trial . . . a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").

However, at trial, Franklin repeatedly stated he had "no objection" to the admission of the three photographs he complains of now. Additionally, on appeal he was unclear in the briefing and at oral argument about which exhibits he contended were prejudicial.

To best preserve error, a defendant should be careful and precise with the language used when objecting at trial. *See* MRE 103(a)(1)(B) (A defendant should "state the specific ground" for objection "unless it [is] apparent from the context.").