870 So.2d 897 (2004)
Carmelo I. FIGUEROA, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-1341.
District Court of Appeal of Florida, Fifth District.
April 8, 2004.
James F. Cummins, Inverness, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Mary G. Jolley, Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
The issue presented to us for consideration is whether certain cell telephone records obtained from a telephone service provider pursuant to an investigative subpoena, as opposed to a warrant, violates the Fourth Amendment proscription *898 against unlawful searches and seizure. Because we conclude that obtaining the records did not amount to a search, we find no violation of the appellant's constitutional right and affirm.
Carmelo I. Figueroa was charged with conspiracy to traffic in cocaine in excess of 400 grams, trafficking in cocaine, and possession of cocaine. Mr. Figueroa moved to suppress certain evidence that was found in his vehicle after a traffic stop. His vehicle was searched incident to the arrest based on probable cause that was founded on information received in connection with the interception of information related to a cell phone number. An evidentiary hearing was held before the judge who denied the motion to suppress. Mr. Figueroa then pled nolo contendere to the charges as filed, reserving the right to appeal the denial of his motion to suppress, and was adjudicated guilty and sentenced to state prison.
The evidence at the suppression hearing reflected that Mr. Figueroa was identified by the Citrus County Sheriff's Office Special Investigations Unit as a suspect in a narcotics ring. In furtherance of the investigation the Special Investigations Unit requested certain cell telephone records from Nextel Communications, a wireless telephone company, by serving Nextel with an investigative subpoena. The foundation for the request was section 934.23(4), Florida Statutes (2000), a statute that authorized the State to use a subpoena to obtain information without first seeking the approval of a court. That subsection of the statute, which concerns the disclosure of customer communications or records by the provider of electronic communication services, reads[1]:
(4)(a) Except as provided in paragraph (b), a provider of electronic communication service or remote computing service may disclose a record or other information pertaining to a subscriber or customer of such service, not including the contents of communication coveredby subsection (1) or subsection (2), to any person other than an investigative or law enforcement officer.
(b) A provider of electronic communication service or remote computing service shall disclose a record or other information *899 pertaining to a subscriber to or customer of such service, not including the contents of communications covered by subsection (1) or subsection (2), to an investigative or law enforcement officer only when the investigative or law enforcement officer:
1. Obtains a warrant issued by the judge of a court of competent jurisdiction;
2. Obtains a court order for such disclosure under subsection (5); or
3. Has the consent of the subscriber or customer to such disclosure.
(c) A provider of electronic communication service or remote computing service shall disclose to an investigative or law enforcement officer the name, address, telephone toll billing records, telephone number or other subscriber number or identity, and length of service as a subscriber or customer of such service and the types of services the subscriber or customer used when the governmental entity uses a subpoena.
(d) An investigative or law enforcement officer who receives records or information under this subsection is not required to provide notice to a subscriber or customer."
(Emphasis added).
Subsections (4)(a) and (b) of the statute make specific reference to "contents of communication." The term, "contents," is defined in section 934.02(7), Florida Statutes (2000), as it relates to wire, oral or electronic communications, as including "any information concerning the substance, purport, or meaning of that communication." Section 934.22, Florida Statutes (2000), generally prohibits a person or entity who provides an electronic communication service or remote computing service to the public from knowingly divulging the contents of a communication, except under certain limited described conditions, one of which is pursuant to section 934.23. An "electronic communication" is defined by section 934.02(12), Florida Statutes (2000), as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by use of a wire, radio, [or] electromagnetic ... system ..." It does not include, among other exclusions, a wire or oral communication, or communications made through a tone-only paging device.
The information subpoenaed by and received by the Special Investigations Unit from Nextel in the present case consisted of the numbers dialed from and received by a particular cell phone associated with an identified wireless telephone account (referred to as a "toll analysis"), and the name, address, telephone number, type of service and other similar information for the wireless account subscriber (referred to as "subscriber information"). No court order or warrant was obtained by the Special Investigations Unit in connection with the issuance of the subpoena, nor was Mr. Figueroa notified by law enforcement authorities or Nextel that the records were being requested.
The cell phone in question was in the possession of one James Morrell, and registered to Todd Puckett, both of whom are co-defendants of Mr. Figueroa. Using the information obtained from Nextel by the investigative subpoena, law enforcement then obtained a wiretap and a "dialed number recording device" (apparently, "Caller I.D."), pursuant to court orders. Based in part on the information gathered through the wiretap and Caller I.D., Mr. Figueroa and the others were arrested and charged with a variety of drug offenses.
At the hearing on the motion to suppress, the State conceded that Mr. Figueroa had standing to challenge the evidence *900 sought to be suppressed because he was a participant in some incriminating conversations that were intercepted by virtue of the wiretap.[2] The probable cause underpinning the wiretap was, in part, information obtained from Nextel by use of the investigative subpoena. After considering the evidence presented, the trial court found that the toll analysis did not fall within the definition of "contents" of an "electronic communication," as contemplated by sections 934.02(7) and (12), Florida Statutes (2000), and was not protected by the Fourth Amendment. He held, accordingly, that the toll analysis and subscriber information were properly the subject of the investigative subpoena, and thus could be used to demonstrate probable cause to support the later wiretaps.
Mr. Figueroa's argument, reduced to its essence, is that a number transmitted from one cellular telephone to another, or to a cellular telephone company is "content" of an "electronic communication," and cannot be obtained by law enforcement authorities using only an investigative subpoena. His position is that the wiretap procedure, including court approval, must be utilized to acquire this information. We disagree.
We begin with consideration of Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). In that case the United States Supreme Court decided that information obtainable through the use of a pen register is not a search, and is, therefore, not within the constitutionally protected sphere of Fourth Amendment privacy. A pen register is essentially the opposite of Caller I.D. It is defined as a device that "records and decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted," but it does not include the contents of the communication. See § 934.02(20), Fla. Stat. (2000). Thus, when a pen register is installed at the offices of a telephone company, it will record the numbers dialed from a particular telephone. Because telephone companies and their employees have access to the information, the court reasoned that a telephone caller could have no legitimate expectation of privacy in the numbers he or she dials. Thus, according to the Smith majority, if a caller voluntarily conveys this numeric information to the telephone company, the Constitution does not restrict access to it, and law enforcement can obtain it without a showing of probable cause. The Supreme Court later explained that a search does not occur for Fourth Amendment purposes unless the individual seeking to invoke the constitutional protection "manifested a subjective expectation of privacy" in the subject matter of the challenged search, and "society [is] willing to recognize that expectation as reasonable." Kyllo v. United States, 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)(quoting California v. Ciraolo, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)).
The Florida Supreme Court confronted a permutation of Smith in State v. Jackson, 650 So.2d 24 (Fla.1995). There, the court considered whether the State was required to seek court authorization pursuant to sections 934.07 and 934.09, Florida Statutes (1991), to lawfully intercept information transmitted to a display pager through a duplicate pager. These statutes set out strict procedures that law enforcement authorities must follow to intercept wire, oral, or electronic communications, including the requirement to demonstrate probable cause. The law enforcement officers in Jackson, apparently relying on Smith, monitored numbers called from the *901 appellant's display pager without seeking or receiving the court authorization required by sections 934.07 and 934.09. The numbers intercepted included a two or three digit code that would identify the caller, the caller's telephone number, and the amount of illicit drugs the caller wanted to purchase. The appellant argued that the numbers dialed into her pager were, therefore, electronic communications for which wiretap procedures had to be followed. The State argued that a duplicate display pager is similar to a pen register, and was not governed by the statutory requirements for a wiretap order.
The Jackson court rejected the State's position that the pen register and "trap-and-trace device" (the earlier version of Caller I.D.) procedures apply, and held that the wiretap prerequisites set out in the statute had to be applied. The court said in this regard:
These devices are attached to a telephone line to reveal only numbers dialed to or from that line. The caller has no control over what numbers are recorded on the pen register or the trap-and-trace device. In contrast, a pager such as the one Jackson used reveals numbers dialed by the caller. Because the caller decides which numbers to enter, the caller could dial in the telephone number of the telephone line from which the call is made or could dial another telephone number all together. The callers in this case also dialed substantive information, including an identifying code and a quantity of drugs they wanted to purchase. Thus, because the interception of the pager may disclose telephone numbers and coded messages as dialed by the caller, monitoring a pager with a duplicate digital display pager is more intrusive than using a pen register or a trap-and-trace device. We therefore hold that any communication via a pager other than a tone-only pager requires a wire tap order under sections 934.07 and 934.09.
Jackson, 650 So.2d at 28.
The critical fact in Jackson was that the interception of pager transmissions to the appellant disclosed not only telephone numbers, but coded messages transmitted by the caller to the appellant. That is to say, the pager transmission included "contents," as defined by section 934.02. Jackson, then, when read in light of Smith, essentially means that the legislature recognized in Chapter 934 that an individual might have a subjective expectation of privacy with respect to the "contents" of a pager message, even though that expectation might not exist with respect to the telephone numbers received by the pager.
In the present case, however, there were no messages or quanta of information concerning the "substance, purport, or meaning of the communication" that were procured by law enforcement authorities, and thus no "contents" were intercepted. By use of the subpoena, the Special Investigations Unit obtained only phone numbers, with no communicative information regarding the substance of the calls. The interception of phone numbers, without more, falls squarely within the holding of Smith.
We conclude, therefore, that in view of the facts adduced at the suppression hearing, the Special Investigations Unit properly used an investigative subpoena to obtain the toll analysis and subscriber information from Nextel, and that the trial court properly denied the motion to suppress.
The judgment and sentence is, accordingly, affirmed.
PETERSON and THOMPSON, JJ., concur.
NOTES
[1] The statute was amended in 2002 by Laws of Florida 2002-72. Section 934.23(4) now reads:

(4)(a) An investigative or law enforcement officer may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber or customer of such service, not including the contents of a communication, only when the investigative or law enforcement officer:
1. Obtains a warrant issued by the judge of a court of competent jurisdiction;
2. Obtains a court order for such disclosure under subsection (5);
3. Has the consent of the subscriber or customer to such disclosure; or
4. Seeks information under paragraph (b).
(b) A provider of electronic communication service or remote computing service shall disclose to an investigative or law enforcement officer the name; address; local and long-distance telephone connection records, or records of session times or durations; length of service, including the starting date of service; types of services used; telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and means and source of payment, including any credit card or bank account number of a subscriber to or customer of such service when the governmental entity uses a subpoena or obtains such information in the manner specified in paragraph (a) for obtaining information under that paragraph.
(c) An investigative or law enforcement officer who receives records or information under this subsection is not required to provide notice to a subscriber or customer.
[2] While we have some misgivings about this, we accept the State's concession.