MYERS, P.J.,
for the Court.
¶ 1. Jael Fraise was convicted in the Pearl River County Circuit Court of armed robbery and possession of a weapon by a convicted felon. He was sentenced as a habitual offender to a term of life imprisonment on both counts to run consecutively in the custody of the Mississippi Department of Corrections (MDOC). He now appeals his conviction arguing that: (1) prosecutorial comments and efforts to impeach witnesses constituted prosecutorial misconduct; (2) the State violated Rule 9.04 of the Uniform Rules of Circuit and County Court in failing to provide the statements of witnesses; (3) the trial court erred in allowing the photographic lineup to be admitted into evidence; (4) the trial court erred in allowing the testimony of Jeanette Quintana with regard to the photographic lineup; (5) the trial court erred in allowing the testimony of police investigator Holly Krantz; (6) the trial court erred in admitting the photograph of Fraise seized from his apartment; (7) the trial court erred in failing to grant a circumstantial-evidence instruction; and (8) he received ineffective assistance of counsel. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. Quintana, Grant Stevens, and Stephanie Childs were at the Pit Stop convenience store in Picayune, Mississippi on the night of September 25, 2006. Quintana and Stevens were employees at the Pit Stop; Childs was a patron, who had stopped in to purchase a drink. Shortly after Childs entered the Pit Stop, a male armed with a handgun entered the store demanding money. He was wearing black pants; a black, long-sleeved shirt; black gloves; and a black “do-rag” over his face. Upon entering the store, the robber grabbed Childs and pushed her against the counter. He pointed the gun at Stevens, who was working at the register, and demanded that Stevens empty the register’s contents into a bag. He also pointed the gun at Quintana and told her not to move. She was sitting at a table approximately sixteen feet away from the register. Stevens complied with the robber’s demands and placed all of the register’s money into the bag, totaling $425. After Stevens gave the bag of money to the armed man, the robber released Childs and ran out of the store. Stevens pursued the man on foot and witnessed the robber get into a red Oldsmobile and flee the scene.
¶ 3. When Stevens returned to the Pit Stop, the police had already arrived. Stevens gave the police a description of the red Oldsmobile. A be-on-the-lookout (BOLO) was issued for the red Oldsmobile. The car was subsequently found at the Arborgate Apartments in Picayune by Sheriffs Deputy Rhonda Poche. The car’s hood was warm to the touch, and gravel and mud were found on the car’s underside, which were consistent with the makeup of the Pit Stop parking lot. The police brought Stevens to the Arborgate Apartments, and he positively identified the car as the one he saw flee from the Pit Stop after the robbery. Deputy Poche resided *163 at the Arborgate Apartments, and she informed the investigators that she had seen Fraise operate the same red Oldsmobile prior to the night of the robbery. This led to the police investigation of Fraise.
¶ 4. A few days after the robbery, the lead investigator, Thomas Clark, conducted a photographic lineup for Stevens and Quintana. On the night of the robbery, Quintana told police that she could identify the robber. She testified that she could see the robber’s face through the “do-rag,” and recognized the robber as a regular customer at the Pit Stop. Quintana identified Fraise in the photographic lineup as the person who had robbed the Pit Stop; Stevens was not able to make a positive identification.
¶ 5. These events led to the subsequent search of Fraise’s apartment at the Arbor-gate Apartments. Money consistent with the denominations taken from the Pit Stop, a black “do-rag,” black gloves, and a picture of Fraise with a pistol were recovered from Fraise’s apartment. A warrant was issued for Fraise on September 27, 2006, for the armed robbery of the Pit Stop. Fraise was arrested in California on March 22, 2007, and subsequently returned to Pearl River County, Mississippi.
¶ 6. At the end of a two-day trial, the jury found Fraise guilty of armed robbery and possession of a weapon by a convicted felon.[1] Fraise was sentenced as a habitual offender to life imprisonment on each count, with the sentence on the possession of a weapon by a convicted felon charge to run consecutively to the sentence on the armed robbery charge, with both sentences to be served in the custody of the MDOC. Aggrieved, Fraise appeals his convictions and sentences.
DISCUSSION
¶ 7. Fraise’s first four assignments of error are as follows: (1) prosecutorial comments and efforts to impeach witnesses constituted prosecutorial misconduct; (2) the State violated Rule 9.04 in failing to provide witnesses’ statements; (B) the trial court erred in allowing the photographic lineup to be admitted into evidence; and (4) the trial court erred in allowing the testimony of Quintana with regard to the photographic lineup. Fraise admits in his brief that his counsel did not object to these issues at trial, and our review of the record confirms this. “[An] appellate court is not required to address issues that are not objected to at trial and preserved for appeal.” Chasez v. Chasez, 957 So.2d 1031, 1038(¶ 16) (Miss.Ct.App.2007). Thus, we will not address these issues as they were not properly preserved for review on appeal.
I. Testimony of Police Investigator Holly Krantz
¶ 8. Fraise bifurcates this section into two distinct arguments: the police conducted a warrantless search of his house that violated his Fourth Amendment rights, resulting in the police locating Fraise’s girlfriend, Astrid Hernandez; and Mississippi Rule of Evidence 618 was violated when Hernandez was not given the opportunity to explain or deny statements made by investigator Holly Krantz during her rebuttal testimony.

A. Search

¶ 9. Fraise argues that the police conducted a warrantless search of his phone records violating his Fourth Amendment rights. He contends this illegal search yielded the name and number of Hernandez, and any testimony by Krantz regarding her conversation with Hernan *164 dez is inadmissible as fruit of the poisonous tree.
¶ 10. “[A]ll evidence obtained by virtue of illegal actions of the police is not ‘fruit of the poisonous tree.’ ” Hooker v. State, 716 So.2d 1104, 1112(¶ 28) (Miss.1998). “The test is ‘whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality instead of by means sufficiently distinguishable to be purged of the primary taint.’” Id. (quoting Yates v. State, 467 So.2d 884, 887 (Miss.1984)).
¶ 11. Fraise argues that the police violated his Fourth Amendment rights by obtaining his phone records. Although Fraise does not articulate how the police obtained his phone records, it is gleaned from the record that the Picayune police obtained Fraise’s phone records from his service provider. The police then called numbers that repeatedly appeared on the phone records; one of which belonged to Hernandez. This led to the police discovering Hernandez and interviewing her.
¶ 12. Courts have determined that obtaining phone numbers from service providers is not a Fourth Amendment violation. See Figueroa v. State, 870 So.2d 897 (Fla.Dist.Ct.App. 5th Dist.2004); United States v. Gallo, 123 F.2d 229 (2d Cir.1941). In Gallo, the United States Court of Appeals for the Second Circuit stated:
When a person takes up a telephone he knows that the company will make, or may make, some kind of a record of the event, and he must be deemed to consent to whatever record the business convenience of the company requires. If by any stretch of language the making of such a record could be termed an “interception” of the communication, it is one which the sender has authorized.
Id. at 281. Applying the rules in Figueroa and Gallo that allow the police to obtain phone records from a service provider, we cannot say that Fraise’s Fourth Amendment rights were violated.
¶ 13. Additionally, the State argues that the police would have inevitably discovered the identity of Hernandez and spoken with her. “[Ujnder the inevitable discovery doctrine, the results from an unreasonable search will be admissible if it can be shown that this evidence would have ultimately been discovered by constitutionally permissible means.” Powell v. State, 824 So.2d 661, 667(¶28) (Miss.Ct.App.2002) (citing Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). Given that Fraise and Hernandez were dating at the time of the robbery, the police would have inevitably discovered Hernandez and spoken to her about the robbery and Fraise’s whereabouts through constitutionally permissible means. The police had already begun investigating Fraise and questioning his acquaintances. Through this permissible process, the police would have eventually discovered Fraise and Hernandez’s relationship and questioned her, thus, removing the taint of the alleged illegal search.

B. Testimony

¶ 14. Next, Fraise argues the trial court violated Mississippi Rule of Evidence 613 when it denied the defense’s request to call Hernandez after Krantz testified.[2] *165 Krantz testified as a rebuttal witness about a phone conversation she had with Hernandez. This testimony occurred after Hernandez had taken the stand. Fraise argues this violated Rule 613 because Hernandez was not afforded the opportunity to explain or deny inconsistent statements made during her testimony that were pointed out by Krantz during rebuttal.
¶ 15. Fraise cites to two inconsistencies that required Hernandez to be able to retake the stand and testify. First, the statements made by Hernandez about whom she spoke with from the Picayune Police Department. On direct examination, Hernandez said that a male officer called her. However, Krantz testified that she spoke with Hernandez. Second, Hernandez testified that she was with Fraise on the night of the robbery. During her rebuttal testimony, Krantz testified that, during her conversation with Hernandez, Hernandez stated that she was not with Fraise on the night of the robbery. Fraise argues that these inconsistencies, coupled with Hernandez not being able to re-testify, violated Rule 613.
¶ 16. This Court will not reverse the lower court’s ruling on the admissibility of evidence absent an abuse of discretion. Stromas v. State, 618 So.2d 116, 119 (Miss.1993). “The trial court is granted substantial leeway in controlling the admission of evidence.” Moran v. State, 822 So.2d 1074, 1077(¶ 8) (Miss.Ct.App.2002). “The discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence.” Ivy v. State, 641 So.2d 15, 18 (Miss.1994). Unless the trial court’s “discretion is so abused as to be prejudicial to the accused, this Court will not disturb the trial court’s ruling on appeal.” Hansen v. State, 592 So.2d 114, 132 (Miss.1991) (internal quotations omitted).
¶ 17. Fraise requested that he be allowed to recall Hernandez as a surrebuttal witness. The trial court denied this request stating that she would not add any new information to the case and Fraise’s defense. As the State correctly points out, “surrebuttal is not an entitlement”; it is within the discretion of the trial judge. Wilcher v. State, 863 So.2d 776, 799(¶ 40) (Miss.2003). We find that the trial court did not abuse its discretion by not allowing Hernandez to be called on surrebuttal. It is very likely that Hernandez’s surrebuttal testimony would not have changed from her original testimony. She would have maintained that Fraise was with her on the night of the robbery and that she spoke with a male officer when she was contacted by the police. Because the trial court has control over the presentation of cumulative evidence, it was within the trial court’s discretion to deny Fraise’s request to recall Hernandez, as it did not prejudice his ease. See M.R.E. 403 and 611.
¶ 18. More importantly, Fraise did not request to proffer what Hernandez would have testified to on surrebuttal. “Without such [a] ... proffer, this Court cannot determine whether the evidence would have been material or relevant or whether its exclusion constituted prejudicial error.” Hammers v. Hammers, 890 So.2d 944, 957(¶ 52) (Miss.Ct.App.2004). Therefore, this issue is without merit.
II. Photograph of Fraise Seized from His Apartment
¶ 19. Fraise argues that a photograph of him with a gun was erroneously admitted into evidence because the picture was not related to the armed robbery at the Pit Stop. Fraise contends the State never connected the picture to the robbery, causing its admission to be prejudicial.
¶ 20. An abuse-of-discretion standard of review is applied to the trial *166 court’s admission or exclusion of evidence. Delashmit v. State, 991 So.2d 1215, 1218(¶ 9) (Miss.2008).
¶ 21. This Court faced a similar argument in Grant v. State, 762 So.2d 800 (Miss.Ct.App.2000). There, this Court found the photograph of the defendant holding a gun similar to the one used in a robbery was highly probative because “[the defendant] did not possess the gun when the police apprehended him, and the gun that the police recovered in close proximity to the place where they apprehended him did not bear his fingerprints.” Id. at 805-06(¶ 14). This Court concluded that the picture of the gun connected the defendant to the identical weapon used in the crime; thus, the picture was highly probative and admissible. Id.
¶ 22. In the case at bar, all three witnesses to the armed robbery at the Pit Stop described the handgun as black and silver in color. However, this handgun was never recovered by the police. Fraise’s parole officer, Brenda Varnado, stated in her report that she accompanied three Picayune police officers to Fraise’s apartment to speak with him about the armed robbery. Fraise was not at the apartment when they arrived. While she was standing in the kitchen area, she noticed pictures printing out of a computer. One picture depicted Fraise standing in a bathroom with a black and silver handgun lying on the counter. As in Grant, the photograph in the present case connected Fraise to the armed robbery at the Pit Stop, as it shows him holding a handgun almost identical to the one used in the robbery. Therefore, it was highly probative, and its admission was not an abuse of discretion. Accordingly, this issue is without merit.
III. Circumstantial-evidence Instruction
¶ 23. Fraise contends the State did not provide any direct evidence that he committed the armed robbery at the Pit Stop, and a circumstantial-evidence instruction should have been given to the jury.
¶ 24. “[A circumstantial-evidence] instruction must be given only where the prosecution is without a confession and wholly without eye witnesses to the gravamen of the offense charged.” Price v. State, 749 So.2d 1188, 1193(¶ 15) (Miss.Ct.App.1999) (emphasis added). “Where the evidence is partly direct and partly circumstantial, an accused is not entitled to an instruction that the evidence must exclude from their minds every other reasonable theory than that of guilt because that standard is not applicable to the testimony of eye-witnesses.” Id. at 1194(¶ 17) (internal quotations omitted). “Direct evidence is eyewitness account.” Id. at (¶ 16).
¶ 25. In the case at bar, three people witnessed the robbery. Childs, Stevens, and Quintana were all present in the Pit Stop when it was robbed. Quintana testified that she recognized the robber as a regular customer at the Pit Stop. When the police conducted a photographic lineup, she picked Fraise on two separate occasions. The eyewitnesses and their statements negate Fraise’s entitlement to a circumstantial-evidence instruction. This issue is without merit.
IV. Ineffective Assistance of Counsel
¶ 26. Fraise argues that his trial counsel was ineffective. He lists a myriad of reasons: (1) defense counsel failed to challenge Quintana’s out-of-court identification and her in-court identification; (2) defense counsel improperly sought admission of Detective Clark’s report into evidence; (3) defense counsel improperly stipulated that certain State exhibits could be admitted into evidence; (4) defense counsel failed to *167 fully investigate the State’s and defense’s witnesses; (5) defense counsel failed to submit jury instructions regarding Fraise’s alibi defense and eyewitness testimony; (6) defense counsel failed to file motions challenging the warrantless search of Fraise’s apartment; and (7) defense counsel failed to obtain a copy of the 911 tape in this matter and file a motion for discovery.
¶ 27. There is a presumption that a trial attorney’s performance is competent. Edwards v. State, 615 So.2d 590, 596 (Miss.1993). To succeed on a claim of ineffective assistance of counsel, an appellant must prove that counsel’s overall performance was deficient and that this deficiency prejudiced his defense. Watts v. State, 981 So.2d 1034, 1039(¶ 12) (Miss.Ct.App.2008) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). “To show prejudice, the claimant must demonstrate that, but for his attorney’s errors, there is a reasonable probability that a different result would have occurred.” Id.
¶ 28. All of Fraise’s contentions can be dismissed as trial strategy. “ ‘[C]ounsel’s failure to file certain motions, call certain witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy1 and do not give rise to an ineffective assistance of counsel claim.” Pruitt v. State, 807 So.2d 1236, 1240(¶ 8) (Miss.2002). Moreover, given the amount of evidence against Fraise and the photographic identification by Quinta-na, we find no reasonable possibility that a different result would have occurred. Accordingly, this issue is without merit.
¶ 29. THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I — ARMED ROBBERY AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IMPRISONMENT AND COUNT II — POSSESSION OF A WEAPON BY A CONVICTED FELON AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IMPRISONMENT, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THE SENTENCE FOR COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE FOR COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT. BARNES, J., CONCURS IN RESULT ONLY. MAXWELL, J., NOT PARTICIPATING.

. Fraise had previously been convicted in New Jersey of carjacking and kidnapping.

. Mississippi Rule of Evidence 613(b) provides:
Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).